Samuel MEYERS, as President of Local 259, United Automobile, Aerospace and Agricultural Implement Workers, Plaintiff-Appellee,

v.

PAREX, INC., Defendant-Appellant.

No. 82–7129, Docket 1198.

United States Court of Appeals, Second Circuit.

Argued May 14, 1982.

Decided Sept. 13, 1982.

Alan B. Pearl, Jericho, N.Y. (Clifford P. Chaiet, Barbara Jaccoma, Jericho, N.Y., on the brief), for defendant-appellant.

Larry Magarik, New York City (Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, on the brief), for plaintiff-appellee.

Before FEINBERG, Chief Judge, and LUMBARD and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

Parex, Inc. appeals from a February 10, 1982, judgment of the District Court for the Southern District of New York (Lee P. Gagliardi, Judge) confirming a labor arbitration award against it. Parex claims that the arbitrator exceeded his authority by failing to adhere to the plain language of the collective bargaining agreement and by basing his decision on an interpretation of federal labor law. For the reasons that follow, we affirm the judgment of the District Court.

Parex and Local 259, UAW (the Union) were parties to a collective bargaining agreement covering twenty-two part-time employees. On July 18, 1980, during the term of this agreement, Parex's full-time employees, who were covered by a separate collective bargaining agreement between Parex and the Union, went on strike. The part-time employees decided to honor the Union's picket lines and stayed out of work until January 9, 1981, when they, through the Union, made an unconditional offer to Parex to return to work.[1] When the part-

---

1. During the strike, Parex mailed to all employees a letter in which it stated: "[D]uring the strike we will do everything we can to run our business and to meet our customer's needs so that there will be jobs for you to come back to"

time employees reported for work on January 13, 1981, Parex informed them that they had been permanently replaced.

Contending that Parex's replacement of the part-time employees violated the terms of their collective bargaining agreement, the Union submitted the dispute to arbitration pursuant to a broad arbitration clause contained in the agreement. Specifically, the Union claimed that Parex had violated the agreement by replacing the part-time employees without just cause and formal advance notice and by hiring replacements without using the Union's employment service and without notifying the Union shop steward. In addition, the Union argued that Parex's actions constituted a "lockout" in violation of section 12 of the agreement. After a hearing, the arbitrator ruled for the Union, finding that Parex had failed to notify its part-time employees that they would be replaced if they refused to cross the picket lines and that, by refusing to reinstate these employees, Parex had engaged in a lock-out.

 On appeal, Parex contends that the award must be vacated because the arbitrator failed to adhere to the language of the collective bargaining agreement. In essence, the employer argues that the arbitrator's interpretation of the agreement is not only wrong, but so clearly wrong that the resulting award fails to draw its essence from the agreement. We disagree. In his opinion and award, the arbitrator stated that three sections of the collective bargaining agreement were applicable to the dispute: section 2, which provided that Parex "shall hire such additional employees [as it needs] from an employment office operated by the Union" and required Parex to notify the Union shop steward whenever any new employee was hired; section 5, in which Parex agreed not to discharge any employee without just cause and written notice; and section 6, which provided for arbitration of grievances and disputes. Though the arbitrator's opinion explaining his award is not unambiguous, it is evident that he considered the replacement of the part-

time employees to be a discharge within the meaning of section 5, and it is fairly inferable that he construed the requirement of "notice" to mean not merely advance warning that a discharge will occur but also advance warning of what would constitute a ground for discharge. Whether or not we would so construe the contract, we cannot say that the arbitrator exceeded his authority in making these interpretations. *Cf. Edna H. Pagel, Inc. v. Teamsters Local Union 595,* 667 F.2d 1275 (9th Cir. 1982) (upholding decision of arbitrator that construed contract provisions barring discharge for crossing bona fide picket line to prohibit replacement of those honoring picket line). The District Court correctly stated that an arbitration award will not be vacated when the arbitrator explains his decision "in terms that offer even a barely colorable justification for the outcome reached," *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 704 (2d Cir. 1978), even if the arbitrator's interpretation of the contract is clearly erroneous, *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 432 (2d Cir. 1974).

Parex further contends that the award must be vacated because the arbitrator relied on federal law, rather than the terms of the collective bargaining agreement, and that his interpretation of federal law was erroneous. In rejecting Parex's argument that it considered the part-time employees to be "sympathy strikers" who could be replaced immediately, the arbitrator pointed out the distinctions between this case and *Redwing Carriers, Inc.,* 137 N.L.R.B. 1545 (1962), *enforced sub nom. Teamsters Local 79 v. NLRB,* 325 F.2d 1011 (D.C. Cir. 1963), *cert. denied,* 377 U.S. 905, 84 S.Ct. 1165, 12 L.Ed.2d 177 (1964), which had approved replacement of a sympathy striker. In *Redwing Carriers* the employer had told the employee involved that he would be discharged if he did not cross the picket line. The employer in that case had also proved that he acted only to preserve the efficient operation of his business.

and "Any of you who wishes to come to work is welcome, our doors remain open."

In *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597–98, 80 S.Ct. 1358, 1361–1362, 4 L.Ed.2d 1424 (1960), the Supreme Court, interpreting a similarly ambiguous arbitrator's award, stated:

[The award] may be read as based upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of the submission. Or it may be read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to "the law" for help in determining the sense of the agreement. A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.

We agree with the District Court that the arbitrator did not clearly base his award on federal labor law. Although the arbitrator discussed the ability of an employer under federal labor law to replace "sympathy strikers" under some circumstances, this discussion appears not to be the basis of his award, but simply a response to Parex's argument that federal law, and in particular *Redwing Carriers, Inc., supra,* permitted the employer's action. Even if the arbitrator had misread *Redwing Carriers,* which we do not suggest, his possibly erroneous view of the employer's substantive rights under federal labor law would not undermine his authority to determine that the contract entitled the replaced employees to the procedural protection of prior notice and that replacement without such notice was a lock-out, prohibited by section 12 of the agreement.

Given the limited scope of review of arbitration awards, we cannot say that this arbitrator failed to base his decision on the collective bargaining agreement. Accordingly, we affirm the judgment of the District Court.

LUMBARD, Circuit Judge, dissenting:

I dissent.

The arbitrator went so far beyond the question submitted by agreement of the parties that the only proper action for the district court was to deny confirmation.

We are concerned only with an award regarding Parex's part-time employees. However, the relevant facts concern the full-time as well as the part-time employees, as both groups were represented by Local 259 of the United Auto Workers in separate agreements.

The full-time employees' agreement expired on June 30, 1980. Following unsuccessful negotiations, these employees went on strike on July 18, 1980. Three days later, on July 21, the part-time employees chose not to cross the picket line established by the full-time employees, although their own agreement did not expire until a year later, on June 30, 1981. Shortly thereafter, Parex sent all of its employees a letter in which it stated that any employee who wished to return to work could do so. The part-time employees paid no attention to Parex's invitation to return until January 9, 1981, when they offered to return to work in a telegram sent Parex through the Union. On January 12, 1981 the part-time employees presented themselves for work.

Meanwhile, Parex had hired replacements for its striking employees and had replaced all of them by November 30, 1980.

On January 19, 1982 the Union initiated arbitration, claiming that the part-time employees had been locked-out in violation of the parties' collective bargaining agreement. The parties submitted only one question to the arbitrator: "Did the employer violate the collective bargaining agreement by refusing to reinstate 22 employees on January 13, 1981? If so, what shall the remedy be?"

On June 29, 1981, the arbitrator issued an award in favor of the Union. The arbitrator ruled that Parex had committed two breaches of the collective bargaining agreement. First, he held that Parex was duty-bound to notify the part-time employees that they would be replaced if they did not report for work. Concededly, no such notice was given. Second, he held that by refusing to reinstate the part-time employees Parex had engaged in a "lock-out."

The arbitrator directed Parex to reinstate the part-time employees upon their application, to terminate the replacements, and to pay damages to the Union and the employees. Both of the arbitrator's findings of breach are absolutely unsupported by the actual language of the parties' bargaining agreement. Accordingly, the arbitrator's award should not be confirmed.

The fourteen page agreement between Parex and the Union makes no mention whatever of sympathy strikes or of any notice which Parex was obliged to give before replacing employees who failed to come to work. The arbitrator could find nothing in the agreement or in Parex's conduct which gave the employees any right to notice before being replaced.

The arbitrator did identify three sections of the collective bargaining agreement, which, in his view, were "pertinent to the dispute." Plainly, however, none of these three sections imposed any duty to give notice. The arbitrator first cites Section 2 of the agreement. This Section obligated Parex to hire any additional employees through the Union employment office and to notify the Union shop steward when any new employee was hired. Obviously such a provision is inapplicable where all the Union members are already out on strike, and have by that fact shown their refusal to cooperate with Parex under Section 2.

Next, the arbitrator cites Section 5 wherein Parex agreed not to fire any employee without just cause and written notice. It would be a perversion of the simple meaning of words to say that the employer has fired someone who voluntarily absented himself and refused to return.

Third and finally, the arbitrator cites Section 6. Section 6 does not make the case for notice any better. It provides for arbitration of grievances "as to the meaning, application, performance or operation of any provision of this agreement." The arbitrator relied on this Section in ruling the parties' dispute arbitrable. But the Section is clearly unrelated to any notice requirement.

The arbitrator's holding that Parex engaged in a lock-out is equally unsupported. The only section of the collective bargaining agreement to cover lock-outs is Section 12. Section 12 prohibited Parex from engaging in a lock-out pending the resolution of any "undetermined challenge, dispute, claim, grievance or difference" between itself and its employees. Plainly, however, Section 12 did not apply to the instant case as no such dispute existed between Parex and the sympathy strikers. The parties agreed that Section 12 did not apply, and the arbitrator's opinion does not cite Section 12. Thus the arbitrator did not, and could not have based his holding that Parex engaged in a lock-out on the only language in the agreement to specifically cover lock-outs.

Instead, notwithstanding the transparent failure of his analysis to show any basis for a notice requirement, the arbitrator ruled that by replacing the employees without notice Parex engaged in a lock-out.

To support his lock-out conclusion the arbitrator cited *Redwing Carriers, Inc.,* 137 N.L.R.B. 1545 (1962), *enfd. sub. nom. Teamsters Local 79 v. N.L.R.B.,* 325 F.2d 1011 (D.C. Cir. 1963), *cert. denied,* 377 U.S. 905, 84 S.Ct. 1165, 12 L.Ed.2d 177 (1964) for the proposition that notice was required before Parex could replace the sympathy strikers. *Redwing* is clearly distinguishable as the picket line in that case was not at the employer's own place of business. This circumstance was held to require the employer to give notice and to prove it was necessary to replace the employee to preserve efficient business operations. However, where the refusal to cross the picket line occurs at the employer's own place of business the Board has held that the employer may treat the employee as an economic striker, *see Newberry Energy Corp.,* 227 N.L.R.B. 436 (1976) and may permanently replace him in order to continue his normal operations. *G & H Towing Co.,* 168 N.L.R.B. 589 (1967). Obviously, prior notice need not be given an economic striker. In view of these settled principles the failure of the bargaining agreement to deal specifically with sympathy strikers and notice was a conclusive refutation of the Union's position.

In short, the arbitrator's interpretation of the contract is so transparently illogical and beyond reason that we ought to set aside the judgment of the district court which confirmed it. Although it is true that the courts must look on arbitrators' awards with considerable tolerance, it is equally true that the courts should not confirm awards which do violence to the facts or the terms of the parties' agreement. *See Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386, 393–94 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981); *Detroit Coil Co. v. International Assoc. of Machinists and Aerospace Workers, Lodge 82,* 594 F.2d 575, 579–81 (6th Cir. 1979); *Timken Co. v. Local Union No. 1123, United Steelworkers,* 482 F.2d 1012, 1014–15 (6th Cir. 1973); *Torrington Co. v. Metal Products Workers Union, Local 1645,* 362 F.2d 677, 681–82 (2d Cir. 1966).

There can be no doubt that the heavy load our judicial systems must carry makes it highly desirable for disputants to settle their disagreements through arbitration. But it does not encourage arbitration for the courts to abdicate their responsibility fairly to scrutinize the basis for an arbitrator's award. Indeed, a rule of law which allows an arbitrator's award to be challenged only for fraud, corruption, or undisclosed conflict of interest, will surely make parties reluctant to forego the more reliable remedies available in our courts under the established principles of law.

I concede that reasonable men, including judges, can disagree on where to draw the line in reviewing arbitration awards. Frequently it does not plainly appear whether the arbitrator has or has not exceeded the bounds of his authority. But no such difficulty exists in the present case. Here the arbitrator clearly exceeded his authority, and the opinions we have filed reveal as much. The arbitration award before us should not receive this Court's stamp of approval.

I would reverse the judgment of the district court and vacate the arbitrator's award.