OPINION
EDWARD WEINFELD, District Judge.
Petitioner, Vito J. Pitta, as president of the New York Hotel and Motel Trades Council, AFL-CIO, moves for summary judgment vacating and/or remanding an arbitrator’s award. Respondents, ten New York City hotels (“the Hotels”), cross-move for summary judgment to affirm the award. The petitioner is president of a labor organization which is the collective bargaining agent for various employees employed by the Hotels, who are members of the Hotel Association of New York City, Inc. Petitioner and respondent were parties to a 1981 collective bargaining agreement (“Agreement”) which provided for the resolution of disputes between the parties through a grievance procedure, with a final and binding decision by “a permanent arbitrator to be known as the Impartial Chairman.”
Background
Each day during the weeks ending November 25 and December 2, 1984, room attendants in the Hotels, members of the Union, failed to complete two of the rooms they were assigned to clean. The Hotels responded by docking the wages of these employees a proportionate amount. The workers’ union, the New York Hotel and Motel Trades Council (“Union”), disputed the Hotels’ authority to do this, and this dispute was submitted to the Impartial Chairman.
In an arbitration award dated January 14, 1985 the Impartial Chairman found that the room attendants at the Hotels had “dropped” two rooms per. day from their assigned quotas at the direction of the union, and that such conduct was “clearly a partial work stoppage” in violation of a specific provision of the Agreement. The Impartial Chairman further found that the room attendants are not solely time workers and not solely piece workers, that for decades they have worked under production standards called quotas, and that the dropping of rooms violated that recognized standard. The Impartial Chairman held that there was justification for the Hotels to take disciplinary action against employees whose failure to perform work assignments was wilful and did not result from danger to health, safety, lack of equipment or supplies. Relying on the basic concept that workers must be paid for work they perform, but need not be paid for work not done, the arbitrator upheld the Hotels’ action, but “only against employees who wilfully ‘dropped’ rooms.”
At a rehearing of the dispute, on February 22, 1985, petitioner claimed that the award violated state law and the Agreement. The Impartial Chairman reaffirmed his award after consideration of the arguments presented. Evidence presented on this motion indicated that the dropping of the rooms may have been strategic action directed by the Union with respect to then pending negotiation with the Hotels for renewal of the collective bargaining agreement.
Petitioner filed an action in the State Supreme Court of New York to vacate and/or remand the two arbitration awards. That action was removed to this court as a suit arising under the Labor-Management Act, 29 U.S.C. § 185, pursuant to 28 U.S.C. § 1441.
*846 Discussion
I. Authority of the Impartial Chairman under the Agreement
The first issue raised in this case is whether the Impartial Chairman exceeded his authority under the Agreement in reaching his decision. The United States Supreme Court has made it clear that unless an arbitration decision does not draw its essence from the contract, then a court is bound to enforce the award and may not review the merits of the arbitrator’s decision, even if his reasoning is ambiguous or the court believes its own interpretation of the contract would be the better one.[1] Moreover, our Court of Appeals has held that an arbitration award will not be vacated as long as the arbitrator explains his decision “in terms that offer even a barely colorable justification for the outcome reached.”[2] This principle applies even if the arbitrator’s interpretation of the contract is clearly erroneous.[3]
Under the parties’ Agreement, the arbitrator is given authority to make final and binding decisions regarding any dispute “involving questions of interpretation or application of any clause of [the] Agreement, or any acts, conduct or relations between the parties.” The Impartial Chairman found that the workers’ activity was á partial work stoppage, which is specifically prohibited under Paragraph 17 of the Agreement. That provision also gives the Impartial Chairman the authority to resolve disputes in reference to work stoppages, and pursuant to that authority he found that the Hotels were entitled to take the disciplinary action of docking the workers’ pay because of the breach of the work-stoppage provision. He reached this decision by interpreting the compensation provisions of the Agreement as recognizing the dual nature of the room attendants’ jobs. He found that under the Agreement, attendants were not paid solely on the basis of the number of hours worked, and therefore the employers’ action of docking them pay for work not done could be sustained. The Impartial Chairman based his interpretation on the fact that the compensation provisions set wages for a 35-hour week, but also require extra pay for extra rooms and cots. He found that the interface of these provisions should be interpreted to mean that the room attendants are not time workers nor are they merely piece-rate workers, and that, therefore,
Where, as here, the failure to perform assigned duties is wilful, there is no justification for requiring an employer to compensate employees for work they did not do.[4]
In view of the broad powers granted to the Impartial Chairman, this court cannot say that the arbitrator’s decision does not offer “even a barely colorable justification” for the outcome reached. While petitioner points out that Paragraph 6(b)(1) of the Agreement provides that each employer will not pay less than the minimum weekly wages for the total number of hours per week, and that Paragraph 8(A) provides that the working hours per week on which the minimum wage is predicated shall be thirty-five hours, this does not require a different result. The Impartial Chairman specifically addressed these contentions by interpreting the contract as recognizing a special dual nature of employment in the case of the room attendants which makes their compensation based not only on the hours they work, but also on the work they do. In fact, as the Impartial Chairman pointed out, it was this same rationale, in a prior decisión, that had resulted in an award in favor of the Union prohibiting the docking of wages. In that arbitration, the Hotels had docked wages of room attend *847 ants who had completed their room quotas but had failed to work a thirty-five hour week, due to their attendance at union meetings held during their assigned work hours. The Impartial Chairman held that this was improper action on the part of the Hotels.
It is not for this court to review the merits of the arbitrator’s decision. There is no basis for vacating or remanding the Impartial Chairman’s award based under the Agreement.
II. Violation of the Law
Petitioners also make the claim that by upholding the docking of pay from workers who are paid on an hourly basis, the Impartial Chairman’s award violates New York Labor Law section 193. Section 193 provides that no employer may make any deduction from the wages of an employee, with exceptions not applicable in the instant situation.
In East Coast Industries, Inc. v. Becconsall,[5] the Nassau County District Court interpreted section 193 to mean that, “no deduction may be made [from an employee’s wages] on account of work not done or improperly done.”[6] In Guepet v. International Tao Systems, Inc.,[7] the Nassau County Supreme Court held that section 193 affords “a rigid restriction upon what an employer may deduct from an employee’s wages____ Nowhere does this section permit an employer to make contemporaneous deductions from wages because an employee failed to perform properly.”[8] No appellate state court has defined the scope of this statute.
The respondents contend that the statute is inapplicable since the arbitration award was not a deduction from wages but rather involved the non-payment of wages that were never earned. Moreover, they contend that the statute was not designed to protect employees from a wilful and concerted refusal to perform work as part of an organized union campaign to put bargaining pressure on an employer. However, it is unnecessary to resolve this issue concerning the scope of the statute. Even, if petitioner’s contention is correct that the statutory prohibition in Section 193 applies to this case, such an application of the New York law would be preempted by federal law. To require employers to compensate employees for the time spent engaging in contractually proscribed conduct, which is not the subject of protection under the National Labor Relations Act, would amount to interference with the “free play of economic forces” that is not within the province of the states to control.[9]
Congress intended to forbid state regulation of economic weapons available to labor and management, even where none of the state regulated conduct is covered by the federal statute.[10] The weapon of “self-help” is permitted by federal law to both employer and employee, and it is privileged against state regulation. Self-help forms an integral part of the employer’s effort to achieve its bargaining goals during negotiations with its employees and their union. Allowing its use is a part of the balance struck by Congress between the conflicting interests of the union, the employees, the employer and the community.[11]
Thus, in International Association of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission,[12] the Supreme Court held that the state could not prohibit a union’s concerted *848 refusal to work overtime, which it termed a partial strike activity. The Court held that it was a form of economic self-help that was “part and parcel” of the process of collective bargaining. In short, the fact that Congress did not affirmatively legislate on particular labor or management matters does not mean it surrendered its right of preemption to the states. In such instances, the critical inquiry is whether the exercise of state activity would curtail or entirely prohibit self-help so as to frustrate effective implementation of the policies of the National Labor Relations Act.[13]
Like International Association of Machinists & Aerospace Workers, this case clearly" involves the interpretation of a state law which prohibits private conduct in the labor-management field. The fact that, unlike the above-mentioned case, the law in question here is of general applicability, rather than specifically aimed at regulating the relations between employees, their union, and their employer in the bargaining process, is not determinative. The New York statute is clearly aimed at employer-employee labor relations in general, and moreover, it is well settled that the mere general applicability of a state prohibition is not sufficient to exempt it from preemption.[14] It is necessary to perform a balanced inquiry into such factors as the nature of the federal and state interests in regulation, the potential for interference by the state with federal regulation, and the impact of such interference upon the free economic play of the bargaining process.
In New York Telephone Company v. New York State Department of Labor,[15] the Supreme Court upheld a New York statute of general applicability, which involved a state program for payment of unemployment benefits to striking employees and incidentally affected the employer-employee play of economic forces in bargaining. However, in that case, the Court concluded that Congress had decided to tolerate interference with the employer-employee play of economic forces because the payment in question involved disbursement from public funds, the employer-provided monies were funneled through a public agency, mingled with other funds, and, clearly, were ultimately public funds imbued with a public purpose. Moreover, the state unemployment statute in New York Telephone Company was structured to comply with a federal statute, Title IX of the Social Security Act of 1935, which established a participatory federal unemployment compensation scheme. The Court found that this federal statute provided additional evidence that Congress did not deny the States the power to provide unemployment benefits for striking workers.[16]
The facts in the attendants’ case are plainly distinguishable. Section 193 does not involve disbursements from public funds; to the contrary, under petitioner’s interpretation, based on lower state court rulings, private employers would be mandated to pay direct compensation to employees who had wilfully failed to perform their work. Unlike in New York Telephone Company, this would not be a matter of the state fashioning its own unemployment compensation program. Moreover, the purpose of section 193 is to protect the wage-earning workman who, unlike the entrepreneur who takes a risk of non-payment, depends upon his weekly pay, by insuring that the sole remedy for inefficient work as between employer and employee is the employer's right to discharge the employee.[17]
Clearly this purpose does not apply to the wilful failure to perform work, which an arbitrator has found does not require compensation under the contract between the parties, and which evidence indicates was done, under the union’s direction, to increase bargaining leverage in the exist *849 ing contract negotiations between the parties.[18] Therefore, it cannot be said that the interpretation of section 193 urged by petitioners involves, as it did in New York Telephone Company a “conduct touching] on interests so deeply rooted in local feeling and responsibility that ... we could not infer that Congress had deprived the states of the power to act.” [19] Moreover, there is no basis upon which to infer that New York had any deep interest in insuring that the wilful non-performance of work by an employee be compensated, or that any discipline be taken against him in another form, such as discharge, transfer of position, or demotion.
The Supreme Court has been clear that “[T]he legislative purpose may ... dictate that certain activity ‘neither protected nor prohibited’ be deemed privileged against state regulation.”[20] The ability of an employer to deny payment to an employee who is a mixed piece-rate/time-worker, for work wilfully not done at the direction of his union, must be considered to be an activity meant to be unregulated and left to the control of the free play of economic forces.[21] As the Court stated in International Association of Machinists & Aerospace Workers, “self-help is of course also the prerogative of the employer because he, too, may properly employ economic weapons Congress meant to be unregulable.” [22]
The attempt by petitioner to invoke the New York law as a bar to the Hotels’ action, in this case, is analogous to the situation in International Association of Machinists & Aerospace Workers. In International Association of Machinists & Aerospace Workers, the employer and the union were, as here, engaged in negotiations for renewal of an expiring collective bargaining agreement, and the union directed its members to engage in a refusal to work overtime. The employer invoked the State’s unfair labor practices law in order to halt the union activity because it was unable to overcome the union tactic with its own economic self-help means.[23] The Court held that such state regulation was impermissible because it denied one party to an economic contest a weapon that Congress meant him to have available, as shown by its failure to regulate or prohibit it, and thus preemption was effective.
In this case, to interpret section 193 to require payment to workers for wilful nonperformance of work in an attempt to further their negotiating position with respect to a new contract, when the arbitrator had found that they are compensated partially on the basis of the actual work they do, would allow; New York to enter into the substantive aspects of the bargaining process to an extent which appears contrary to Congressional intent. The statute, as interpreted by the petitioner, would significantly deny the Hotels an important weapon in their economic contest with the Union. Therefore, the arbitrator’s award is not invalidated by New York Labor Law section 193.
III. Finality of the Award
The petitioner also contends that the Impartial Chairman’s award is not final because it does not specify which employees wilfully dropped rooms, and therefore it has not yet been determined which employees were wrongfully docked pay. Petitioner asserts that this requires a remanding of the award for determination of that issue. This raises the issue of whether, by *850 determining that only employees who wilfully dropped rooms could be docked pay without determining which particular employees came within that category, the Impartial Chairman’s award is incomplete and therefore incapable of being enforced. Given the context of the dispute which was submitted to arbitration, the Impartial Chairman’s award is not so incomplete as to lack finality.
Petitioner brought a blanket challenge to the employers’ wage-docking action as being contrary to the Agreement and in violation of New York law. These challenges were not made with respect to the separate cases of each individual attendant, but rather were directed at the general principle of wage “docking” under the Agreement and New York law. The award issued by the Impartial Chairman addressed that general issue and established a standard for judging individual disputes. It is final for the purpose for which it was submitted to arbitration. Given the Impartial Chairman’s continued jurisdiction over disputes between the parties, this award’s finality does not result in any prejudice to the determination of any of the individual employees’ rights. Individual cases may be presented for determination by the Impartial Chairman.
Conclusion
Petitioner’s motion is denied and respondents’ cross-motion for summary judgment confirming the arbitration awards of the Impartial Chairman is granted.
So ordered.

. W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

. Meyers v. Parex, Inc., 689 F.2d 17, 18 (2d Cir.1982) (quoting Andros Companía Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 704 (2d Cir.1978)).

. Myers v. Paret, Inc., 689 F.2d at 18; I/S Stavborg v. Natl. Metal Converters, Inc., 500 F.2d 424, 432 (2d Cir.1974).

. Decision of the Impartial Chairman, no. 85-9, January 14, 1985 at 3.

. 60 Misc.2d 84, 301 N.Y.S.2d 778 (Nassau Dist. Ct.1969). *

. Id. at 780.

. 110 Misc.2d 940, 443 N.Y.S.2d 321 (N.Y.Sup. Ct.1981).

. Id. at 322.

. See Internat’l Asso. of Machinists & Aerospace Workers v. Wisconsin Emp. Rel. Comm'n, All U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976); see also NLRB v. Nash-Finch Co., 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971).

. See New York Tel. Co. v. New York State Dep’t of Labor, 440 U.S. 519, 530, 99 S.Ct. 1328, 1335, 59 L.Ed.2d 553 (1979).

. Teamsters, Chauffeurs & Helpers Union v. Morton, 377 U.S. 252, 259-60, 84 S.Ct. 1253, 1258, 12 L.Ed.2d 280 (1964).

. 427 U.S. 132, 149, 96 S.Ct. 2548, 2557, 49 L.Ed.2d 396 (1976).

. New York Tel. Co., 440 U.S. at 531, 99 S.Ct. at 1336.

. Farmer v. United Brotherhood of Carpenters & Joiners, 430 U.S. 290, 300, 97 S.Ct. 1056, 1063, 51 L.Ed.2d 338 (1979); see also New York Tel. Co. v. New York State Dep’t of Labor, 440 U.S. 519, 533, 99 S.Ct. 1328, 1337, 59 L.Ed.2d 553 (1979).

. 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979).

. New York Tel. Co. v. New York State Dep't of Labor, 440 U.S. at 536, 540, 99 S.Ct. at 1341.

. See East Coast Indus., Inc. v. Becconsall, 60 Misc.2d 84, 301 N.Y.S.2d 778, 779 (Nassau Dist.Ct.1969).

. See, e.g., Schanzer Aff., para. 3.

. Internatl Asso. of Machinists & Aerospace Workers v. Wisconsin Emp. Rel. Comm'n, 427 U.S. at 136, 96 S.Ct. at 2551 (quoting San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)).

. Hanna Mining Co. v. Marine Eng’rs Beneficial Asso., 382 U.S. 181, 187, 86 S.Ct. 327, 330, 15 L.Ed.2d 254 (1965).

. Internatl Asso. of Machinists & Aerospace Workers v. Wisconsin Emp. Rel. Comm’n, 427 U.S. at 149, 96 S.Ct. at 2557 (stating that the states are not afforded flexibility in picking and choosing which economic devises of labor and management will be deemed unlawful).

. 427 U.S. at 147, 96 S.Ct. at 2556.

. Id. at 148, 96 S.Ct. at 2557.