**Vito J. PITTA, as President of New York Hotel and Motel Trades Council, AFL–CIO, Plaintiff,**

v.

**HOTEL ASSOCIATION OF NEW YORK CITY, INC. and Millard Cass, Defendants.**

No. 86 Civ. 4510 (RWS).

United States District Court, S.D. New York.

Aug. 8, 1986.

Shea & Gould, New York City, for plaintiff; Vincent F. Pitta, Stephen Steinbrecher, of counsel.

Solomon & Rosenbaum, Drechsler & Leff, New York City, for defendant; Michael F. McGahan, of counsel.

SWEET, District Judge.

Both the plaintiff Vito J. Pitta, as President of New York Hotel and Motel Trades Council, AFL–CIO ("the Council") and defendant Hotel Association of New York City, Inc. ("the Association") have moved for summary judgment with respect to the June 25, 1986 arbitration award ("the Award") issued by defendant Millard Cass ("Cass"), the Impartial Chairman for the Hotel Industry of New York City. The Council seeks to set the Award aside and to compel the Association to enter into the selection process for a new chairman. The Association seeks to confirm and enforce the Award. On the facts and conclusions set forth below, the Award will be vacated and the Association directed to participate in the process of selecting a new chairman.

**The Parties**

The Council is a labor organization comprising nine affiliate unions, each of whom have members employed by the Association's member hotels. The Council's offices are located at 707 Eighth Avenue, New York, New York. The Association is a multi-employer association comprising approximately one hundred hotels located in New York City. The Association's offices are located at 40 West 38th Street, New York, New York. Cass is the Impartial Chairman for the Hotel Industry of New York City. The offices of the Impartial Chairman are located at 250 West 57th Street, New York, New York.

**Prior Proceedings**

The Council initiated this action on June 9, 1986, seeking relief under Section 301 of the Labor Management Relations Act ("LMRA") and the Federal Arbitration Act, Sections 4 and 5. Simultaneously with the filing of this action, the Council brought an order to show cause seeking a temporary restraining order and preliminary injunction to bar Cass from serving as the Impartial Chairman. Expedited discovery was held, and a hearing on the motion was set for June 20, 1986.

On that day, affidavits were submitted, testimony was taken of Vito J. Pitta, President of the Council, and Albert Formicola,

President of the Association, and exhibits were introduced. At the conclusion of the hearing, the motion for preliminary injunctive relief was denied on the grounds that the Council failed to establish irreparable harm, one element of the two-pronged test for injunctive relief in this Circuit. *See Standard & Poor's Corp. v. Commodity Exchange,* 683 F.2d 704 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). An oral opinion was rendered concluding that the Council had the right to terminate Cass' term based upon the agreements between the parties but that such right came into being sixty days after notice was given, that notice date having been found to be June 2, 1986.

On June 25, 1986 after a hearing before him Cass issued an Award, concluding, contrary to the conclusions of the court reached on June 20, 1986 that his term would not expire on August 2, 1986. Both the Council and the Association have moved with respect to this Award seeking summary judgment, on the one hand to vacate the Award, and on the other, to enforce it.

The instant motion was heard on July 11, 1986, and affidavits, exhibits, memoranda, and Local Rule 3(g) statements were submitted. No further testimony was offered. Subsequently, by conference on August 6, 1986, the parties confirmed the continuation of the dispute, sought an early resolution of their motions and reached an informal agreement as to the conduct of the grievance procedure until such resolution without prejudice to their perceived rights.

It is upon all these prior proceedings that the following findings and conclusions are reached.

**Findings**

The Council represents over 25,000 employees of the approximately 100 hotels which comprise the Association. The hotel industry is a significant economic presence, and makes an important and vital contribution to the functioning of New York City and the metropolitan region. A mutually satisfactory relationship between these parties is an integral part of the functioning of this industry.

At least by August, 1967 the parties had agreed to employ a Impartial Chairman with a fixed term to arbitrate disputes arising from the relationship between these entities. These agreements continued in varying form up to 1981. As of March 17, 1981 the parties successfully negotiated a collective bargaining agreement of some forty-two pages (the "Agreement"). In addition, the Agreement extended the terms of their 1978 collective bargaining agreement, and the term of the Agreement was stated to extend to May 31, 1985. On June 26, 1985 the parties agreed in a renewal agreement (the "Renewal Agreement") to extend the terms of the Agreement to June 26, 1990.

Paragraph 15 of the Agreement established the office of the Impartial Chairman and its procedures, and provided for the compensation of the Impartial Chairman to be shared equally. The Agreement also provided as follows:

> Should the Impartial Chairman resign, refuse to act, or be incapable of acting, or should the office become vacant for any reason, the ASSOCIATION and the UNION shall immediately and within five (5) days after the occurrence of such vacancy, designate another person to act as such Impartial Chairman. If they fail to agree, the Chief Judge of the Court of Appeals of the State of New York shall, upon application of either party, on due notice to the other, summarily make such appointment.

No term for the Impartial Chairman was provided in the Agreement.

The Agreement also contained a standard arbitration clause as follows:

> All complaints, disputes or grievances arising between the parties hereto involving questions of interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be re-

**250**

ferred to a permanent umpire to be known as the Impartial Chairman, and his decision shall be final and binding upon the parties hereto.

The Renewal Agreement provided for the parties to meet to revise the grievance machinery. It contained no provision with respect to the term of the Impartial Chairman.

On August 16, 1967 the parties wrote to Peter Seitz to confirm his appointment as Impartial Chairman, stating:

This agreement shall continue for the duration of the collective bargaining agreement unless terminated sooner by mutual agreement.

This letter was signed by both parties and accepted by Peter Seitz.

A similar letter in similar form was sent to Cass on June 8, 1978, signed by both parties (the "Letter") with the legend "Agreed and Accepted" signed by Cass in the lower left hand of the second page. That letter stated:

This agreement shall continue for the duration of the collective bargaining agreement unless terminated sooner by either party, upon notice to the other of not less than sixty (60) days.

It is the interpretation of this letter upon which the resolution of the dispute turns.

In 1985, in connection with the Renewal Agreement there were discussions between the parties concerning the grievance procedure, the union seeking its acceleration and the hiring of an additional chairman, a request to which the Association did not accede. It was agreed that no changes in the grievance procedure would be undertaken without mutual agreement.

Also by 1985, the question of Cass' remuneration had become an issue. On February 28, 1985 he wrote both parties on the subject. In March the union replied, suggesting a month-to-month arrangement. The Association, by letter of April 3, agreed and was prepared to recommend that:

You be compensated in accordance with your stated commitment at the rate re-quested by you effective January 1, 1985 on a month to month basis.

The Association paid its share of the increase requested by Cass, the Council did not. The Council protested the Association's action, and the matter was finally resolved in September, 1985.

By April 22, 1986, in connection with the issue of retroactive increases in compensation for Cass, counsel for the union took the position that Cass' employment was at will. The Association responded by stating its position that none of the Impartial Chairmen had a written agreement and that Cass "serves at his as well as the pleasure of the parties."

By letter of June 2, 1986, the Council sought to unilaterally terminate Cass.

Thereafter, an article in the June 9, 1986 issue of the Hotel Voice, the Council's newspaper, stated that the Council had taken a "major and long considered step for the overhaul of the grievance machinery by dismissing Millard Cass as Impartial Chairman."

**Conclusions**

Jurisdiction of the court has been established.

In this Circuit, summary judgment may not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1319–1320 (2d Cir.1975). These standards are strictly applied, reserving summary judgment for cases which present no genuine issue of material fact. *Rodriguez v. Village of Larchmont*, 608 F.Supp. 467, 471 (S.D.N.Y. 1985).

In the context of this action, summary judgment is appropriately invoked by the parties, as they have cross-moved for judgment and have no dispute as to the events which occurred. The parties have had three opportunities to submit all testimony, documents and prior agreements to the court in connection with the preliminary

injunctive hearing, the instant motion, and the arbitration conducted in the interim by Impartial Chairman Cass. Under these circumstances, where the facts have been fully developed at several hearings, the court may proceed to decide the factual issues and render judgment on the merits, as it is clear that no further guidance will be provided by the parties. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (1983) (*citing Tripp v. May,* 189 F.2d 198 (7th Cir.1951); *Fox v. Johnson & Wimsatt, Inc.,* 127 F.2d 729 (D.C.Cir.1941)).

Resort to principles of construction as to the meaning of the June 8, 1978 letter would be unavailing. All three signatories are of equal competence and responsibility. The lack of clarity with respect to Cass' term evidenced in the letter and the absence of any reference in the Agreement, simply bespeaks the confidence that both the Council and the Association had in Cass, a confidence which now regrettably has been shattered.

■ The Association contends that the Letter in form is between the Council and the Association, on the one hand, and Cass on the other. The question is whether "terminated sooner by either party" means a party to the collective bargaining agreement or party to the Letter. If it is the latter, Cass has a term coterminous with the collective bargaining agreement as the Association and Council must jointly terminate Cass (under this interpretation) to create a vacancy in the Impartial Chairmanship. If it is the former, he serves at the will of either the Council or the Association and can be given notice by each unilaterally.

The Agreement offers no assistance in resolving this dilemma as it contains no reference to termination of the Impartial Chairman, and only notes that the appointment process shall be triggered "should the office become vacant for any reason." The parties have submitted no evidence of the employment terms of comparable industrywide chairmen, and it can be presumed that as in all human affairs, there are differences which range from at will to stated terms.

A review of the Letter establishes that the "either party" referred to is either the Council or the Association. Indeed, both the entire context of the history between the parties and the internal wording and format of the Letter refers to the performance of a recently negotiated collective bargaining agreement between the Association and the Council recently arrived at. The undertakings of that Agreement are by the Association and the Council and the appointment is made by them. Only as to the performance of duties does any obligation rest on Cass and such obligation is simply *pro forma* resting on the acceptance of the appointment.

Determinative is the history of the language, preceded as it was by the letter of August 16, 1967, to Peter Seitz, a precedessor of Cass. There the termination was stated to be by "mutual agreement." If the parties were indeed the Impartial Chairman, on the one hand, and the parties to the collective bargaining agreement, on the other, there could be no termination except with the agreement of the Impartial Chairman. For the phrase "mutual agreement" to have any meaning, it must be construed to mean agreement between the parties to the collective bargaining agreement, the Council and the Association. The same concept was carried over into the Letter by the use of the "either party" language.

Such a result not only is a proper construction but is compelled by the logic of the parties' underlying intent—labor peace. Regardless of the very considerable capacities of Impartial Chairman Cass which are beyond dispute, he has now become a source of contention and a threat to continued performance of the underlying Agreement. There is no controversy as to the existence of the office, nor can there be under the agreements. In addition, there is an entirely satisfactory process of appointment which will relieve the present factiousness.

Of course, it is recognized that this construction results in employment at the will of either the Association or the Council, a situation which could result in chaos should either party to the Agreement become irresponsible. Clearly this issue must be addressed squarely at the time of the appointment of Cass' successor and that will resolve the issue in the most appropriate form, a negotiation evenly balanced between the Council and the Association.

Finally, of course, the issue of the effect of Cass' award of June 25, 1986 must be considered. As a general matter, identical parties who seek to raise issues which have been previously determined or which could have been raised in a prior adjudication where the parties had an opportunity to litigate are barred from relitigating those issues, regardless of whether the prior adjudication occurred before a court or an administrative agency. *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Wickham Contracting Co., Inc. v. Board of Education of the City of New York*, 715 F.2d 21, 26 (2d Cir.1983).

Cass' arbitration award was premised on an interpretation of the collective bargaining agreement and the employment letter which was diametrically contrary to the findings of fact which this court made in the prior hearing on the preliminary injunction. This court determined that a temporary restraint would be denied because of the lack of irreparable harm resulting from the fact that although the employment agreement was between the Association on one hand and the Council on the other, and it modified the provisions of the collective bargaining agreement, the Council's June 2, 1986 termination of Cass would not terminate his employment until August 1, 1986 in any event. In short, it was a necessary element of this court's resolution of the request for preliminary injunctive relief that irreparable harm would have existed without this sixty-day provision, as the court's interpretation of the Agreement and employment letter concluded that there

would be a vacancy in the office of the Agreement Arbitrator by August 1, 1986.

■ The conclusions reached by Cass in the June 25, 1986 arbitration were, therefore, previously litigated by this court in a preliminary injunctive hearing where all parties were given a full and fair opportunity to present testimony, exhibits, and documents on the meaning of these agreements. Just as a prior arbitral award would have had binding *res judicata* effect on this court, *National Benefit Fund for Hospital and Health Care Employees v. Presbyterian Hospital*, 448 F.Supp. 136 (S.D.N.Y.1978); *James L. Saphier Agency, Inc. v. Green*, 190 F.Supp. 713, 719 (S.D.N.Y.), *aff'd on other grounds*, 293 F.2d 769 (2d Cir.1961), so too the findings of fact reached by this court which were necessary to the resolution of the preliminary injunction motion and which were the subject of extensive hearing testimony, are binding on the arbitration. *Hunter Douglas, Inc. v. Sheet Metal Workers International*, 714 F.2d 342, 346 (4th Cir.1983); *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir.1979); *Lummus Co. v. Commonwealth Oil Refinery Co.*, 297 F.2d 80, 89–90 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). The Second Circuit's recent opinion in *Sperry International Trade v. Government of Israel*, 689 F.2d 301 (2d Cir.1982) confirms this preclusive effect. In *Sperry*, the court held that its prior decision reversing a district court's granting of a preliminary injunction on the grounds that no irreparable injury existed did not bar an arbitrator's subsequent award on the merits. However, the Honorable Amalya L. Kearse noted that she found no preclusion because:

Nowhere did we state that Israel had a right to the funds or suggest that Sperry had breached the contract in such a way as to give Israel the right to draw down the letter of credit. Indeed, we expressly declined to state a view as to such issues as Sperry's likelihood of prevailing on the merits and the seriousness of the

dispute as to the merits of Sperry's claim.

*Id.* at 305.

In contrast, this court made extensive findings of fact which precluded the arbitrator's redetermination of the same issues, and the Association has provided no authority for the proposition that a federal court may be so overruled.

The Award is vacated, the term of the Impartial Chairman has been truncated by reason of the Council's action and the parties are directed to select his successor. In anticipation of an application to stay the effect of this order pending appeal, the order shall not become effective until August 29, 1986 to permit the Association to seek a further stay.

IT IS SO ORDERED.