Vito J. **PITTA**, as President of the New York Hotel and Motel Trades Council, AFL–CIO, Plaintiff-Appellee,

v.

**HOTEL ASSOCIATION OF NEW YORK CITY, INC.,** Defendant-Appellant,

**Millard Cass, Defendant.**

No. 293, Docket 86–7678.

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1986.

Decided Dec. 12, 1986.

Robert M. Schanzer, New York City (Stephen Steinbrecher, Robert L. Sacks, Michael F. McGahan, Solomon, Rosenbaum, Drechsler & Leff, New York City, on the brief), for defendant-appellant.

Vincent F. Pitta, New York City (Peter D. Stergios, Jerrold F. Goldberg, Shea & Gould, New York City, on the brief), for plaintiff-appellee.

Before VAN GRAAFEILAND, MESKILL, and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the arbitrability, under an industry-wide arbitration grievance procedure set up by a collective bargaining agreement, of a dispute about the grievance process itself. The appeal also presents the issue, rarely litigated, whether an arbitrator may resolve a grievance that requires him to interpret his own contract of employment to decide if he has been validly dismissed. Defendant-appellant Hotel Association of New York ("Association") appeals from a judgment of the District Court for the Southern District of New York (Robert W. Sweet, Judge) vacating, on cross-motions for summary judgment, an arbitrator's ruling that the New York Hotel and Motel Trades Council, AFL–CIO ("Council") lacked authority unilaterally to dismiss him from his position as arbitrator. 643 F.Supp. 247. We vacate Judge Sweet's judgment and order that the grievance be submitted to arbitration before a different arbitrator.

I. Background

For decades a series of collective bargaining agreements have governed the relationship between the Association, comprising approximately 100 New York City employer hotels, and the Council, representing more than 25,000 New York City hotel employees. The collective bargaining agreement (the "Bargaining Agreement") currently in effect creates a procedure for arbitrating grievances and complaints. Paragraph 15 of the Bargaining Agreement broadly defines what disputes are arbitrable:

All complaints, disputes or grievances arising between the parties hereto involving questions of interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire to be known as the Impartial Chairman, and his decision shall be final and binding upon the parties hereto.

Paragraph 15 specifies procedures for designating a replacement "[s]hould the Impartial Chairman resign, refuse to act, or be incapable of acting, or should the office become vacant for any reason": if the par-

ties cannot agree to a successor Impartial Chairman within five days of the vacancy, the Chief Judge of the New York Court of Appeals shall make a suitable appointment upon application of either party to the Bargaining Agreement. The Bargaining Agreement is silent, however, as to the terms of employment or the identity of the Impartial Chairman.

In 1978 the Association and the Council appointed Millard Cass Impartial Chairman. A letter to Cass from the Association and the Council dated June 8, 1978, (the "Employment Agreement"), stated the terms and conditions of Cass's appointment. The Employment Agreement specified that it was to "continue for the duration of the [Bargaining Agreement] unless terminated sooner by either party, upon notice to the other of not less than sixty (60) days."

On June 2, 1986, Vito Pitta, as President of the Council, notified Cass and the Association that the Council was terminating Cass's appointment. He called upon the Association to meet and appoint a successor Impartial Chairman as mandated by paragraph 15 of the Bargaining Agreement. The Association, protesting that the Council's action was invalid under the Employment Agreement, took steps to have Cass arbitrate the questions whether he had been validly dismissed by the Council and whether the Office of Impartial Chairman was vacant.

On June 9, 1986, the Council filed this action in the Southern District of New York,[1] requesting (1) a temporary restraining order prohibiting Cass from continuing to act as Impartial Chairman and (2) a preliminary injunction compelling the Association to comply with the procedure for selecting a new Impartial Chairman. The dispute on the merits turned on the meaning of the phrase "either party" in the termination clause of the Employment Agreement. The Council claimed that "either party" referred to each of the two parties to the Bargaining Agreement; under this view the Council acted within its authority in terminating Cass's position without consent of the Association. The Association countered that "either party" referred to Cass on the one hand and to both of the two parties to the Bargaining Agreement on the other; under this theory the Council lacked authority unilaterally to dismiss Cass. The Association urged, in addition, that the dispute was arbitrable under paragraph 15 and therefore unsuitable for determination by the District Court.

Ruling from the bench after a hearing on June 20, 1986, Judge Sweet denied the preliminary injunction. He accepted the Council's theory that "either party" meant either the Council or the Association and that, therefore, the Council acted within its rights in terminating Cass's employment. However, finding that the requirement in the Employment Agreement of sixty days' notice of termination modified the five-day emergency appointment provision in paragraph 15, he concluded that no irreparable harm existed to justify a preliminary injunction.

Five days later, on June 25, 1986, Cass issued a lengthy report deciding the grievance identified as "Paragraph 15, Industry-Wide Agreement—Does a vacancy exist in the Office of the Impartial Chairman." First, he determined that the dispute "over the meaning of the [Employment Agreement] is itself a dispute within the clear intent of Paragraph 15 of [the Bargaining] Agreement" and that "[s]imilarly, a dispute between them over whether there is a vacancy in the position of Impartial Chairman falls within those parameters." Second, noting the absence in the Bargaining Agreement of authority "for any other individual or forum to consider this matter *ab initio*" Cass found he was impelled by both his "authority" and his "duty" to "hear and decide this matter initially." And, finally, he concluded on the merits that the Bargaining Agreement required

1. Though Cass was a defendant in the proceedings before the District Court, he is not a party to this appeal.

joint action by the Association and the Council to terminate his employment. Accordingly, he found no vacancy in the position of Impartial Chairman and made an award in favor of the Association.

Armed with its award, the Association returned to the District Court and sought confirmation and summary judgment dismissing the complaint. The Council cross-moved to vacate the award and sought summary judgment in favor of its complaint. Judge Sweet granted the Council's motions. He reaffirmed his earlier interpretation of the Employment Agreement, finding that the Council acted within its authority in dismissing Cass. And he held on principles of *res judicata* that his earlier decision precluded Cass's subsequent findings and award. The District Judge ordered the award vacated, directed the parties to select a successor Impartial Chairman, and on its own motion stayed the effect of the judgment until August 29, 1986, to permit the Association to seek a further stay from this Court. We denied the requested stay and now consider the Association's appeal of Judge Sweet's rulings.

## II. Arbitrability

■ The threshold question of arbitrability, an issue normally for judicial determination, *AT & T Technologies, Inc. v. Communications Workers of America*, — U.S. ——, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)), was not explicitly considered in either of the District Court's opinions. The Association contends that the broad arbitration clause in paragraph 15 of the Bargaining Agreement covers the dispute over the meaning of the Employment Agreement and that the District Court erred in reaching the merits rather than referring the dispute to arbitration. For reasons that follow, we agree.

In *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra*, the Supreme Court, recognizing the Congressional policy favoring arbitration of labor disputes, provided guidance for determining whether a dispute falls within the scope of an arbitration clause. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* at 582–83, 80 S.Ct. at 1352–53 (footnote omitted). The Court stressed that, particularly in cases of broad arbitration clauses without "any express provision excluding a particular grievance from arbitration," the presumption of coverage can be overcome "only [by] the most forceful evidence of a purpose to exclude the claim from arbitration." *Id.* at 584–85, 80 S.Ct. at 1353–54.

The clause in paragraph 15 mandates arbitration of two classes of disputes: those "involving questions of interpretation or application of any clause of th[e Bargaining] Agreement" and those involving "any acts, conduct or relations between the parties, directly or indirectly," that the parties fail to resolve. No grievance—either specific or general—is excluded from this broad coverage. Thus, provided the clause is susceptible of an interpretation that includes the dispute over the termination clause in the Employment Agreement and the Council fails to muster sufficient evidence of intent to exclude it, the dispute is arbitrable.

We think that insofar as the dispute involved application of paragraph 15, it may fairly be categorized under the first class of arbitrable disputes. The Council protests that the Employment Agreement is independent of the Bargaining Agreement and not subject to the latter's grievance procedures. We have held, however, that where agreements without arbitration clauses supplement an earlier "umbrella" agreement containing such a clause, that clause applies to disputes arising under the later agreements. *S.A. Mineracao Da Trindade-Samitri v. Utah International,*

*Inc.,* 745 F.2d 190, 195–96 (2d Cir.1984); *cf. Necchi v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693, 698 (2d Cir.1965) (arbitration clause in 1961 contract does not cover disputes arising under 1958 contract that "has remained distinct and separate from" 1961 contract), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). The Employment Agreement supplements the Bargaining Agreement by implementing the grievance mechanism mandated in paragraph 15. The duration of the Employment Agreement is defined and limited by that of the Bargaining Agreement itself, further indicating their relatedness. Judge Sweet went so far as to conclude that the Employment Agreement modified paragraph 15 of the Bargaining Agreement. Whether or not that is so, we find the Employment Agreement sufficiently supplementary of paragraph 15 to render disputes over its meaning arbitrable under the Bargaining Agreement.

Even if the Employment Agreement were wholly distinct from the Bargaining Agreement, the dispute would, nevertheless, be arbitrable since it would fall within the second class of arbitrable complaints specified in paragraph 15. The broad language, "any acts, conduct or relations between the parties," clearly encompasses a dispute over one party's alleged dismissal of the Impartial Chairman. Because the dispute is subject to arbitration under paragraph 15, we conclude that the judgment of the District Court should be vacated and the grievance submitted to arbitration.

## III. Bias

 The Association contends not only that the dispute is appropriate for arbitration but also that Cass is the appropriate arbitrator to decide the merits of the grievance, *i.e.,* the validity of his alleged dismissal. Cass himself adopts this view, insisting that because "[t]here is … no provision in the Collective Bargaining Agree-ment for any other individual or forum to consider this matter *ab initio,*" he "has both authority and a duty to hear and decide this matter initially." We disagree and remand the grievance to be heard by a different arbitrator.[2]

It is axiomatic that a neutral decision-maker may not decide disputes in which he or she has a personal stake. However, the unique role of arbitrators, whose special expertise arises from wide experience in their fields, sometimes leads to a gain of their professional knowledge and skill at the cost of the appearance of less than complete impartiality. *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173–74 (2d Cir. 1984); *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.2d 79, 83 (2d Cir.1984). We generally adhere to the rule that "[t]he mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." *Florasynth, Inc. v. Pickholz, supra,* 750 F.2d at 173–74. Not surprisingly, most case law construing the standard for "evident partiality" struggles to draw the fine line separating the "professional" from the "business" relationships of an arbitrator and agents of a party to the proceeding. *See, e.g., Andros Compania Maritima v. Marc Rich & Co.,* 579 F.2d 691, 701 (2d Cir.1978).

The instant case does not require us to decide such a difficult question. Because the subject of the arbitrable grievance directly concerns the arbitrator's own employment for what may be an extended period of time, impermissible self-interest requires his disqualification. In assessing "evident partiality," we need not inquire into whether Cass showed actual rather than merely apparent bias. The relationship between a party and the arbitrator may, in some circumstances, create a risk of unfairness so inconsistent with basic principles of justice that the arbitration

---

2. An arbitration award may be vacated if there is "evident partiality" of the arbitrator, 9 U.S.C. § 10(b) (1982), a standard that may be met by inferences from objective facts inconsistent with impartiality. *See Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.2d 79 (2d Cir.1984).

award must be automatically vacated. For example, we have held, without inquiring further, that an award must be automatically vacated where the arbitrator's father was vice-president of an international union, a local chapter of which was a party to the dispute. *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds, supra,* 748 F.2d at 84–85; *see also Edmund E. Garrison, Inc. v. International Union of Operating Engineers,* 283 F.Supp. 771, 773 (S.D.N.Y. 1968) (even though contract contemplates appointment of non-neutral members to arbitration panel, "the designation of counsel [to one of the parties] as a representative is as repugnant to the collective bargaining agreement as the self-representation of a party on the arbitration panel"). An even stronger risk of unfairness exists here where the arbitrator, acting alone, determines the validity of his own dismissal from a lucrative position.[3]

We do not suggest that an arbitrator must recuse himself from every decision that might have any bearing on his compensation. Carried to extremes, such a rule would preclude an arbitrator, compensated on a per diem basis, from adjudicating any request that would continue a hearing an additional day, such as a request to call additional witnesses. Such trivial concerns are to be contrasted with a dispute concerning the employment of a particular arbitrator for a considerable period of time at a substantial salary.

The Association contends that the parties conferred upon Cass the authority to decide even this dispute "[b]y virtue of the extraordinarily broad delegation of authority and the complete absence of any language limiting the scope of his jurisdiction." Brief for Appellant at 22–23. The Association relies not only on the broad arbitration

clause in paragraph 15 but also on the fact that it explicitly agreed with the Council in a June 26, 1985, Memorandum of Understanding to revise the grievance procedure and to submit to the Impartial Chairman disputes resulting from inability to complete such revision. This arrangement empowers the Impartial Chairman potentially to resolve any issues concerning the grievance process itself.

We find this argument without merit. The Association wrongly equates delegation of powers to the Office of Impartial Chairman with delegation of powers to the specific person appointed to that office. As a permanent umpire, an arbitrator may decide arbitrable grievances that concern the office he occupies. However, he may be disqualified from acting as permanent umpire when an arbitrable grievance concerns him personally. In such circumstances, the arbitrator becomes "incapable of acting" within the meaning of paragraph 15 of the Agreement, and the provision for appointing another person to act as Impartial Chairman takes effect.

## IV. Conclusion

We hold that because the dispute over the meaning of the Employment Agreement and the alleged vacancy of the Office of Impartial Chairman is arbitrable under the Collective Bargaining Agreement, the District Court's order must be vacated. Our decision rests solely on the threshold issue of arbitrability. We intimate no view on the merits of the issue concerning the Council's right to discharge Cass.[4] Because Cass's clear personal interest in the outcome of this dispute disqualifies him from hearing it as Impartial Chairman, we direct the parties to appoint another arbitrator in accordance with paragraph 15 of

---

**3.** Cass's compensation sparked some disagreement between the Association and the Council in 1985 when Cass requested a 100% increase in his $48,000 annual salary. Despite a provision in the Agreement mandating that the parties divide equally the cost of the Impartial Chairman's salary, the Association agreed to Cass's request and began paying its share while the Council refused. The parties ultimately agreed

to a retroactive increase of $10,000 effective June 1, 1984, and an additional $10,000 effective June 1, 1985.

**4.** Because we vacate Judge Sweet's order on the threshold issue of arbitrability, we need not reach the Association's challenge to the District Court's *res judicata* ruling.

the Agreement for purposes of hearing and deciding this issue.

Vacated and remanded.