**KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC., Plaintiff,**

v.

**YLL IRREVOCABLE TRUST, et al., Defendants.**

**No. 11 Civ. 7707.**

United States District Court, S.D. New York.

July 11, 2012.

Ira S. Lipsius, Lipsius–Benhaim Law, LLP, New York, NY, for Plaintiff.

Stephen R. Stern, Mark W. Geisler, Hoffinger Stern & Ross LLP, Ronald David Coleman, Goetz Fitzpatrick LLP, New York, NY, John D. Demmy, Stevens & Lee P.C., Wilmington, DE, for Defendants.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

In an action removed from state court (No. 12 Civ. 3005, the "Removed Action") and consolidated with the instant case, defendants/cross-plaintiffs YLL Irrevocable Trust ("YLL") and Kochav S.A.R.L. ("Kochav," together with YLL, the "Trust Defendants") seek an order vacating and/or enjoining enforcement of an arbitration award (the "Award") transferring ownership of 43 life insurance policies (the "Policies") to plaintiff/cross-defendant Kolel Beth Yechiel Mechil of Tartikov, Inc. ("Ko-

lel"). On May 17, 2012, Kolel cross-moved for confirmation of the Award. (*See* Docket No. 69.) In a Decision and Order dated May 25, 2012 (the "May 2012 Order"), the Court ordered the Trust Defendants to show cause as to why the Court should not confirm the Award. *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* No. 11 Civ. 7707, 863 F.Supp.2d 351, 356, 2012 WL 1948823, at *5 (S.D.N.Y., May 25, 2012). The Trust Defendants responded to the May 2 012 Order in a letter-brief dated June 1, 2012 ("June 2012 Letter") (Docket No. 73).[1]

For the reasons discussed below, the Trust Defendants' request for vacatur of the Award is DENIED, and Kolel's motion for confirmation of the Award is GRANTED.

## I. BACKGROUND [2]

### A. THE UNDERLYING DISPUTE AND PROCEDURAL HISTORY

As the Court explained in its May 2012 Order, this case involves a dispute between Kolel and the Trust Defendants regarding ownership of the Policies. On March 15, 2011, Kolel sold the Policies to the Trust Defendants pursuant to a written purchase agreement (the "Purchase Agreement"). Under the Purchase Agreement, the Trust Defendants agreed to pay the premiums on the Policies, and in the event of the death of an insured, Kolel and the Trust Defendants would divide the death benefits.

Kolel alleges that the Trust Defendants have failed to pay the premiums on the Policies, allowing them to lapse. In October 2011, Kolel filed suit in this Court against the Trust Defendants, Wilmington Savings Fund Society FSB ("Wilmington"), and Meridian Trust Company, claiming, in essence, breach of the Purchase Agreement and seeking an injunction directing transference of the Policies back to Kolel.

By written agreement dated January 12, 2012 and amended February 7, 2012 (the "Arbitration Agreement"), Kolel and the Trust Defendants agreed to arbitrate the dispute, and litigation was stayed pending resolution of the arbitration. The Arbitration Agreement provided that a panel of three rabbis (the "Panel") would arbitrate the case. Kolel and the Trust Defendants each designated a rabbi to represent them on the Panel, and agreed that Shlomo Zalman Kaufman ("Kaufman") would act as the third, neutral arbitrator.

In the Arbitration Agreement, the parties specified that they sought a speedy resolution of the case within two months, and granted the Panel wide latitude in how to reach a decision. The Arbitration Agreement allows the Panel members to "make their award based upon Din Torah, compromise, settlement, or any other way they wish to reach a decision." (Geisler

---

1. In its May 2012 Order, the Court limited the Trust Defendants' response to a five-page letter with citations to the record. The Court imposed this page limit in light of the extensive briefing regarding the legitimacy of the arbitration and the multiple exhibits, affidavits and declarations in support thereof which the Trust Defendants already had submitted to the Court.

2. The facts below are taken from the pleadings and attached exhibits, including the No-

tice of Removal (No. 12 Civ. 3005, Docket No. 1); Decl. of Mark W. Geisler ("Geisler Decl.," No. 12 Civ. 3005, Docket No. 6); Aff. of Rabbi Shlomo Zalman Kaufman ("Kaufman Decl.", Docket No. 62); Decl. of Philip M. Manela (Docket No. 64); Reply Aff. of Stephen Stern (Docket No. 67); Mem. of Law in Support of Mot. to Confirm Arbitration Award (Docket No. 70); and June 2012 Letter (Docket No. 73). Except where specifically referenced, no further citation to these sources will be made.

Decl., Ex. F.) In addition, the Arbitration Agreement states that "[t]he Members of the [Panel] need not disclose, to the Parties or to anyone else the halachic [i.e., Jewish law], legal, factual or other basis for their award . . . ." (*Id.*)

The Panel held seven or eight sessions, beginning either on February 10, 2012 or March 7, 2012.[3] No record was made of the proceedings. On April 10, 2012, the Panel issued the Award, titled "First Preliminary Decision, Ruling and Award of the Rabbinical Court," which mandated the immediate transfer of the Policies to Kolel. Two of the arbitrators signed the Award: Kaufman and Alexander Gransz ("Gransz"), Kolel's appointed arbitrator. The Trust Defendants' appointed arbitrator, Moishe Bergman ("Bergman"), refused to sign the Award.[4]

## B. *THE ACTION FOR VACATUR*

Shortly after the issuance of the Award, and before transference of the Policies to Kolel could be effectuated, the Trust Defendants filed the Removed Action against Kolel, Wilmington, Kaufman, Grausz, and Bergman. The Trust Defendants sought, and the state court granted, an ex parte

temporary restraining order enjoining enforcement of the Award;[5] they also requested an order "nullifying and vacating" the Award. *See Kolel,* 863 F.Supp.2d at 356, 2012 WL 1948823, at *5. The Trust Defendants base their action for vacatur on allegations that Kaufman was partial to Kolel. Kolel filed a Notice of Removal in this Court on April 17, 2012.

## II. *LEGAL STANDARD*

The role of a district court in reviewing an arbitration award is "narrowly limited," and "arbitration panel determinations are generally accorded great deference under the [Federal Arbitration Act]." *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 19 (2d Cir.1997) (citation omitted); *see Zeiler v. Deitsch,* 500 F.3d 157, 164 (2d Cir.2007). This deference promotes the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Telenor Mobile Comm'cs AS v. Storm LLC,* 584 F.3d 396, 405 (2d Cir.2009) (*quoting Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 90 (2d Cir.2005)). As a result, the burden of proof "required to avoid confirmation is very high," *D.H. Blair & Co. v.*

---

3. The Trust Defendants dispute that the February 10, 2012 session was a formal arbitration session. According to the Trust Defendants and Kolel's counsel Philip Manela, the majority of those seven or eight days of arbitration proceedings consisted of "legal arguments," or "opening statements and rebuttals," by the parties. (Docket No. 64, ¶ 12; Geisler Decl., Ex. B, ¶ 20.) The Arbitration Award indicates that the Panel also heard "evidence given in both testimonial and documentary form." (Kaufman Decl., ¶ 31; Geisler Decl., Ex. B.)

4. Pursuant to the Arbitration Agreement, "any decision reached by the Arbitration Panel shall be in writing, executed by at least two of the arbitrators of the Arbitration Panel and need not be notarized or verified." (Docket No. 64, Ex. A.)

5. On April 12 and 17, 2012, the Supreme Court of the State of New York, Rockland County issued orders temporarily enjoining enforcement of the Award. Those temporary restraining orders expired, at most, fourteen days after removal of the action to this Court on April 17, 2012. *See* Fed.R.Civ.P. 65(b); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local No. 70,* 415 U.S. 423, 439–40, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ("An ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal.").

*Gottdiener,* 462 F.3d 95, 110 (2d Cir.2006). A district court will enforce the award as long as there is a "barely colorable justification for the outcome reached." *Rich v. Spartis,* 516 F.3d 75, 81 (2d Cir.2008) (*quoting Landy Michaels Realty Corp. v. Local 32B–32J Serv. Emps. Int'l,* 954 F.2d 794, 797 (2d Cir.1992)).

## A. THE CONVENTION AND THE FAA

The Trust Defendants argue that the Award should be vacated under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), June 10, 1958, 9 U.S.C. §§ 201–208, 330 U.N.T.S. 3.

■ A district court must confirm an arbitration award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA or one of the grounds for refusal specified in the Convention. *See Hall Street Assocs. v. Mattel, Inc.,* 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008); *Telenor,* 584 F.3d at 405 (citation omitted).

Under § 10(a)(1) of the FAA (" § 10(a)(1)"), courts may vacate an arbitration award which "was procured by corruption, fraud or undue means." 9 U.S.C. § 10(a)(1). In order to vacate an award on those grounds, the Second Circuit Court of Appeals has held that it must be "abundantly clear" that the award was the product of fraud, corruption, or undue means. *Karppinen v. Karl Kiefer Mach. Co.,* 187 F.2d 32, 34 (2d Cir.1951); *see also Polin v. Kellwood Co.,* 103 F.Supp.2d 238, 256 (S.D.N.Y.2000) (*citing Karppinen's* "abundantly clear" standard). Although the Second Circuit has yet to articulate a test for vacating pursuant to § 10(a)(1), "courts in this district have found that the party challenging the award must show that '(1)

[its] adversary engaged in fraudulent activity; (2) the petitioner could not, in the exercise of due diligence, have discovered the alleged fraud prior to the award; and (3) the alleged fraud materially related to an issue in the arbitration.' " *Salzman v. KCD Fin., Inc.,* No. 11 Civ. 5865, 2011 WL 6778499, at *3 (S.D.N.Y. Dec. 21, 2011) (*quoting McCarthy v. Smith Barney, Inc.,* 58 F.Supp.2d 288, 293 (S.D.N.Y.1999)).

■ Section 10(a)(2) of the FAA (" § 10(a)(2)") allows for vacatur "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). "Evident partiality may only be found 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.' " *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.,* 668 F.3d 60, 64 (2d Cir.2012) (*quoting Morelite Constr. Corp. v. NYC Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir.1984)). Although the party seeking vacatur must prove evident partiality by showing "something more than the mere appearance of bias," *Morelite,* 748 F.2d at 83 (internal quotations omitted), "[p]roof of actual bias is not required." *Scandinavian,* 668 F.3d at 72. Rather, "partiality can be inferred from objective facts inconsistent with impartiality." *Id.* at 72 (internal quotation marks and citations omitted). A showing of evident partiality must be direct and not speculative. *Sanford Home for Adults v. Local 6, IFHP,* 665 F.Supp. 312, 320 (S.D.N.Y.1987) (citations omitted) ("[T]he interest or bias [of the arbitrator] ... must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative.").

■ Courts may also vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

shown, or in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3) ("§ 10(a)(3)"). "This provision has been narrowly construed so as not to impinge on the broad discretion afforded to arbitrators to decide what evidence should be presented." *Rai v. Barclays Capital, Inc.*, 739 F.Supp.2d 364, 371 (S.D.N.Y.2010), *aff'd* 456 Fed.Appx. 8 (2d Cir.2011). Therefore, when a party seeks to vacate an arbitration award based on an evidentiary decision of the arbitrators, "except where fundamental fairness is violated," that decision "will not be opened up to evidentiary review." *Rai*, 456 Fed.Appx. at 9 (*quoting Tempo Shain*, 120 F.3d at 20).

■ In addition to the grounds listed in § 10(a) of the FAA, the Convention lists seven grounds for denial of confirmation, including if the "recognition or enforcement of the award would be contrary to ... public policy ...." Convention, art. V(2)(b). "Article V(2)(b) [of the Convention] must be 'construed very narrowly' to encompass only those circumstances 'where enforcement would violate our most basic notions of morality and justice.'" *Telenor*, 584 F.3d at 411 (*quoting Europcar Italia S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir.1998)).

## III. *DISCUSSION* [6]

■ In seeking to vacate the Award, the Trust Defendants advance what essentially

amounts to two arguments. First, they assert that the neutral arbitrator, Kaufman, was not actually neutral, but was instead biased in favor of Kolel. Second, they argue that this bias resulted in a premature decision without consideration of material and pertinent evidence. Ultimately, the Trust Defendants have failed to meet the very high burden necessary to avoid confirmation of the Award.

### A. *ALLEGATIONS OF EVIDENT PARTIALITY AND CORRUPTION*

The Trust Defendants contend that that the Award should be vacated pursuant to § 10(a)(1) ("corruption, fraud, or undue means") or § 10(a)(2) ("evident partiality") because Kaufman was biased in favor of Kolel.

■ In support of this claim, the Trust Defendants allege that, on or about March 30, 2012, prior to the issuance of the Award, Kaufman was overheard telling non-party Zisha Gleb ("Gleb") to "[t]ell Babad [president of Kolel] that he has to give me another week and he will receive a 'Psak' (a ruling or decision) in his favor." (Geisler Decl., Ex. B ¶ 41.) According to the Trust Defendants, Kaufman proceeded to exclude Bergman from the arbitration, abruptly cut off the Trust Defendants' first witness (YLL's attorney Douglas Stein, "Stein"), and rushed the Panel to a premature decision before the presentation of evidence. In particular, the Trust Defendants allege that Kaufman purposefully

---

6. In their June 2012 Letter, the Trust Defendants argue that because Kolel has failed to answer the allegations in the Removed Action, those allegations should be deemed admitted pursuant to Fed.R.Civ.P. 8(b)(6). However, in light of the fact that Kolel's cross-motion for confirmation of the Award functions, essentially, like an answer, and because the Trust Defendants have not moved for default judgment, the Court declines, in accord with this Circuit's "strong preference for resolving disputes on the merits[,]" *New*

*York v. Green*, 420 F.3d 99, 104 (2d Cir.2005) (*quoting Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir.2001)), to treat the allegations in the complaint as admitted for the purposes of resolving this dispute. Moreover, even if the Court were to assume the truth of the factual allegations in the Trust Defendants' complaint, the Trust Defendants would still fail, for the reasons discussed in this section, to satisfy the high burden required to vacate an arbitration award.

held a crucial meeting on April 10, 2012, the date the Award was issued, knowing that Bergman was out of the country; and that Kaufman engaged in ex parte communications with Kolel, Grausz, and Wilmington on April 9 and 10, prior to issuance of the Award, regarding preparations for transference of the Policies to Kolel.

The Trust Defendants bear the burden of demonstrating "objective facts inconsistent with impartiality." *Scandinavian,* 668 F.3d at 72 (*quoting Pitta v. Hotel Ass'n of N.Y.C.,* 806 F.2d 419, 423 n. 2 (2d Cir.1986)). Since there is no transcript of the proceedings, and there are few records beyond the Purchase Agreement, the Arbitration Agreement, and the Award, the parties rely on the affirmations of various persons to support their different versions of events.[7] Among the declarations submitted to the Court, only two—that of Uziel Frankel ("Frankel") and David Paneth ("Paneth")—are from individuals without an obvious stake in the outcome of the arbitration.

Frankel has no firsthand knowledge regarding the pertinent facts or events; his opinion is therefore unpersuasive. Paneth, meanwhile, says that he overheard the March 30, 2012 conversation between Kaufman and Gleb and asserts, without foundation, that he knows that Gleb is a "very close associate" of Kaufman. (Geisler Decl., Ex. E.) Paneth offers almost no details regarding the scene he describes. He does not explain why he was in Kaufman's office that day, the basis for his knowledge about Gleb's identity, how he ultimately came to learn the subject of the conversation, or why he relayed

it to the Trust Defendants. Kaufman denies that the conversation ever took place, and indicates that Paneth has a dispute with him stemming from another matter.

The affirmation of one individual as to a conversation he overheard in unclear circumstances regarding a dispute about which he had no personal knowledge does not qualify as objective evidence of impartiality. Indeed, even if the Court credits what Paneth overheard, the conversation between Kaufman and Gleb is not "direct" or "definite" evidence of bias, *Sanford,* 665 F.Supp. at 320, but merely one arbitrator's unguarded expression of his opinion after five or six arbitration proceedings. *See Ballantine Books, Inc. v. Capital Distrib. Co.,* 302 F.2d 17, 21 (2d Cir.1962) ("While it is better in most cases for arbitrators to be chary in expressing any opinion before they reach their ultimate conclusion, and to avoid discussing settlement, it does not follow that such expressions are proof of bias.").

The bottom line is that the Trust Defendants have offered no direct, plausible evidence indicating why Kaufman would be biased toward Kolel or the nature of any relationship between them. *See Sanford,* 665 F.Supp. at 320 ("[I]n evaluating the purported bias of an arbitrator, courts look at: (1) the financial interest the arbitrator has in the proceeding; (2) the directness of the alleged relationship between the arbitrator and a party to the arbitration proceeding; (3) and the timing of the relationship with respect to the arbitration proceeding."). Kolel's alleged ex parte communication on April 2, 2012 with Wilmington, the holder of the Policies (a non-party to the arbitration), and its al-

---

7. The Trust Defendants have submitted the declarations of their attorney-Stein; Uziel Frankel, a non-party rabbi who offers his interpretation under Jewish (Halachic) law of the Arbitration Agreement and Award; and non-party David Paneth, who affirms that he overheard the March 30, 2012 conversation between Kaufman and Gleb. On the other side, Kolel has submitted the declaration of its attorney Philip Manela ("Manela"); and Kaufman has submitted his own lengthy affirmation.

leged ex parte communication with Grausz and Kaufman on April 9, 2012 regarding documentation necessary to transfer the Policies, are not evidence of a special relationship, but merely of inquiries into the practicalities associated with issuing the Award. As for Kaufman's alleged scheme to freeze out Bergman, the allegations in the complaint and the Trust Defendants' June 2012 Letter indicate that Bergman was included in all the Arbitration Panels hearings, and that he was informed of the meeting on April 10, 2012 but could not attend.

Ultimately, the Trust Defendants' allegations of evident partiality are too "remote, uncertain, or speculative," *Sanford,* 665 F.Supp. at 320, to satisfy § 10(a)(2), especially since there is no record of the proceedings and the parties' conflicting accounts amount to little more than "he-said, she-said" factual disputes. *See Teamsters Local Union No. 506 v. E.D. Clapp Corp.,* 551 F.Supp. 570, 577 (N.D.N.Y.1982) (declining to find that an arbitrator was evidently partial within the meaning of § 10(a)(2) given the parties' "conflicting stories" and "the absence of a record from the hearings"). The Court declines to vacate the award pursuant to § 10(a)(2) because a reasonable person would not *"have"* to conclude that Kaufman was partial to Kolel, or biased against the Trust Defendants. *Applied Industrial Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi A.S.,* 492 F.3d 132, 137 (2d Cir. 2007) (emphasis in original); *Sanford,* 665 F.Supp. at 317 (citation omitted).

■ Similarly, the Trust Defendants have failed to prove that the Award was the product of "corruption, fraud or undue means." 9 U.S.C. § 10(a)(1). It is far

from "abundantly clear" that the Award was procured through any of those improper methods,[8] especially because the Trust Defendants have failed to demonstrate—or even suggest—what, if anything, Kaufman stood to gain or what special connection Kaufman had with Kolel that would have given plausible reason to corrupt his decision. *Karppinen,* 187 F.2d at 34. Thus, the Court declines to vacate the Award on those grounds.

**B. ALLEGATIONS REGARDING FAILURE TO CONSIDER EVIDENCE**

■ The Trust Defendants also argue that the Award should be vacated pursuant to § 10(a)(3) of the FAA and Convention Article V(2)(b) because the Panel refused to hear evidence "pertinent and material to the controversy," and the Award therefore violated public policy and due process. 9 U.S.C. § 10(a)(3); *see* Convention, art. V(2)(b).

The Trust Defendants allege, and Kolel acknowledges, that the Panel issued the Award on April 10, 2012 after only one witness, attorney Stein, had testified at a previous hearing for less than a half-hour. Unsurprisingly, the parties disagree about what exactly happened at the April 4, 2012 proceeding during which Stein testified. According to the Trust Defendants, Kaufman "shockingly" and unilaterally interrupted Stein's testimony and stated that there was an urgency to conclude certain matters. Kaufman and Kolel, however, recount that Stein left the hearing early and the parties cross-moved for summary judgment on the issue of ownership of the Policies.

---

8. The Trust Defendants appear to be arguing corruption or undue means, rather than fraud. As such, the standard articulated in *Salzman,* 2011 WL 6778499, at *3, for evaluating § 10(a)(1) claims is not applicable; indeed, even if it were, the Trust Defendants have not demonstrated that Kolel or Kaufman participated in fraudulent activity.

The Trust Defendants have failed to show that the Panel violated "fundamental fairness" in its conduct of the arbitration or in its ultimate decision. *Tempo Shain*, 120 F.3d at 20. Arbitrators are accorded great deference in their evidentiary determinations, and "need not follow all the niceties observed by the federal courts." *Id.* (*quoting Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir.1974)). Although "an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments, he is not required to hear all the evidence proffered by a party." *Rai*, 739 F.Supp.2d at 371–372 (internal quotation marks and citations omitted).

The Panel's decision to hear only one witness does not mean that the arbitration was fundamentally unfair. The Panel held seven or eight sessions to consider legal arguments from both sides prior to issuing the Award, and was not obligated to hear more—or any—testimony to reach its determination. *See Fairchild Corp. v. Alcoa, Inc.*, 510 F.Supp.2d 280, 285–89 (S.D.N.Y. 2007) ("[A]rbitration proceedings require merely an expeditious and summary hearing, with only restricted inquiry into factual issues.") (internal quotation marks and citations omitted). Indeed, the Arbitration Agreement governing the proceedings granted the Panel a great deal of flexibility and deference in deciding how to conduct the arbitration and on what basis to reach its decision.

The fact that the Panel reached a conclusion with almost no testimony is not surprising where, as here, the primary issue was one of contractual interpretation. *See Feifer v. Prudential Ins. Co.*, 306 F.3d 1202, 1210 (2d Cir.2002) ("It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence."). As indicated in the parties' submissions, the primary question is whether the Purchase Agreement transferring ownership of the Policies was conditional. The Trust Defendants assert that pursuant to the Purchase Agreement, Kolel "absolutely and unconditionally" sold the Policies to YLL. (Geisler Decl., Ex. B.) Kolel, meanwhile, argues that sale of the Policies was conditioned upon the Trust Defendants' payment of the premiums on the Policies. According to Kaufman, the Panel ultimately agreed with Kolel that transfer of the Policies was conditional, and concluded that the conditions had not been met.

Although the Award itself is quite short, it does list, generally, the evidentiary bases for the Panel's decision:

> After concluding the above hearings, the Rabbinical Court evaluated the claims, counterclaims and defenses; weighed the evidence given in both testimonial and documentary form; examined the submissions, arguments and admissions; and based on consideration as well of the conduct of the proceedings as a whole, ruled that the 43 policies ... be transferred immediately to Kolel.

(Geisler Decl., Ex. B.) Especially because there is no record of the proceedings, the Trust Defendants are unable to provide the Court with a persuasive or even plausible basis for doubting the considerations stated in the text of the Award, however conclusory or brief. *See, e.g., Jamoua v. CCO Inv. Servs. Corp.*, No. 09–13604, 2010 WL 891148, at *5 (E.D.Mich. Mar. 10, 2010) (citation omitted) ("Where, as here, the party moving to vacate the award provides no transcript or record evidence, but presents only self-serving and conclusory allegations unsupported by any record evidence, it is impossible for this Court to determine that the Panel was guilty of

misconduct."); *Hasel v. Kerr Corp.*, No. 99–1376, 2010 WL 148437, at *3 (D.Minn. Jan. 12, 2010) ("Without a record of the proceeding, or agreement by the parties as to what occurred, [the party seeking vacatur] cannot meet the high threshold required by the FAA to vacate an arbitration award."). Since the Trust Defendants have failed to demonstrate that the Panel lacked even "a barely colorable justification for the outcome reached," *Rich*, 516 F.3d at 81 (citation omitted), the Court declines to vacate the award pursuant to § 10(a)(3) or under the Convention.[9]

### IV. *ORDER*

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the request (No. 12 Civ. 3005, Docket No. 1, ex. A) of defendants/cross-plaintiffs YLL Irrevocable Trust and Kochav S.A.R.L. for vacatur of the "First Preliminary Decision, Ruling and Award of the Rabbinical Court," dated April 10, 2012, is **DENIED;** and it is further

**ORDERED** that the motion (Docket No. 69) of Kolel Beth Yechiel Mechil of Tartikov, Inc. ("Kolel") to confirm the "First Preliminary Decision, Ruling and Award of the Rabbinical Court," dated April 10, 2012, is **GRANTED.**

**SO ORDERED.**

9. The Court is aware that there are issues yet to be resolved between the parties, including claims of damages and attorneys' fees. There is no reason why the parties must retain the same panel of arbitrators for the next phase of the arbitration. Indeed, in light of how matters have proceeded, it would be highly advisable for the parties to try to agree on a new neutral arbitrator, if only to ensure that the parties are not wasting their time, and this Court's, with future litigation.