**Charlie B. JARRELL and General Truck Drivers, Warehousemen and Helpers Local Union No. 5**

v.

**WILSON WAREHOUSE COMPANY, INC.**

Civ. A. No. 79–188–B.

United States District Court, M. D. Louisiana.

May 30, 1980.

Lawrence R. Anderson, Anderson & Anderson, Baton Rouge, La., for plaintiffs.

George K. Anding, Jr., Watson, Blanche, Wilson & Posner, Baton Rouge, La., for defendant.

## MEMORANDUM OPINION

JOHN V. PARKER, Chief Judge.

This is an action to enforce an arbitration award and for damages pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and the Arbitration Act, 9 U.S.C. §§ 1–14. Plaintiffs and defendant have filed a joint stipulation of facts and have submitted the case for final judgment based upon the stipulation, the pleadings, and the briefs filed by the parties.

On May 31, 1978, plaintiff, General Truck Drivers, Warehousemen and Helpers Local Union No. 5 (hereafter the "Union"), and defendant, Wilson Warehouse Company, Inc. (hereafter the "Company"), entered into a collective bargaining agreement. Article VIII of the agreement provides that in cases involving layoffs of employees seniority shall control, subject to the qualifications of the individual employee involved.

On or about June 30, 1978, the Company experienced a reduction in work load and began to lay off personnel. Plaintiff Jarrell and seven other employees were laid off by the Company, effective July 4, 1978.

Jarrell and six of the other employees timely filed grievances pursuant to Article XV of the collective bargaining agreement, contending that they were improperly laid off. After following the preliminary procedures as required by Article XV, the parties submitted the grievances to an arbitrator chosen by them under the agreement as sole arbitrator.

The written stipulation of facts filed in this matter provides, in part, as follows:

"5.

"On or about June 30, 1978, the company experienced a reduction in work load and effected a lay off of personnel, and as a result thereof Charlie B. Jarrell, and seven other employees, were laid off effective as of July 4, 1978.

"6.

"Pursuant to the grievance and arbitration provisions of Article XV of the agreement attached hereto as Exhibit A, Charlie B. Jarrell and six other employees timely filed grievances, which were timely and properly processed through all steps of the grievance and arbitration provisions of said Article XV.

"7.

"Pursuant to said arbitration clause, the parties hereto, [through] their respective duly authorized attorneys, chose Mr. John F. Caraway as the sole arbitrator to hear the arbitration case of said grievances of Mr. Charles B. Jarrell and the other employees who were laid off by Wilson Warehouse Company, Inc.

\* \* \* \* \* \*

"9.

"At said arbitration hearing, all parties hereto attended, with General Truck Drivers, Warehousemen and Helpers Local Union No. 5, Charlie B. Jarrell and the other grievants being represented by Mr. Lawrence R. Anderson, Jr., a duly authorized attorney licensed to practice law in the State of Louisiana, and Wilson Warehouse Company, Inc. was represented by Mr. Robert L. Roland, a duly authorized attorney licensed to practice law in the State of Louisiana.

"10.

"At said arbitration hearing all parties hereto were allowed to present all witnesses and other evidence they desired on their behalf, present opening arguments in favor of their case and to file post-hearing briefs with the arbitrator."

On January 31, 1979, the arbitrator rendered an award which sustained Jarrell's grievance but denied the grievances of the other six employees. The Company was ordered to reinstate Jarrell and pay him all back wages due, subject to deduction for all wages received in other employment and to restore him to lost seniority.

Plaintiff's attorney sent a letter to the Company advising that Jarrell did not wish to be reinstated but still demanded back wages. In response, defendant's attorney sent a letter stating that the Company "feels very strongly that the arbitrator exceeded his authority in light of the specific provisions of Article XIV of the collective bargaining agreement . . . I would suggest that you take whatever action you consider appropriate in the premises."

The parties have stipulated that Jarrell would have received wages, had he not been discharged, in the amount of $6,793.20 and that during that period of time he received $5,017.29 as workmen's compensation and wages from other employment. This action followed the Company's refusal to honor the arbitrator's award and plaintiff also seeks damages for breach of contract and punitive damages plus attorney's fees and contends that penalties and attorney's fees are awardable under LSA–R.S. 23:631 and 632 under the doctrine of pendent jurisdiction.

This Court has jurisdiction over plaintiff's action to enforce the arbitrator's award without regard to jurisdictional amount pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a); *General Warehousemen & Helpers v. Standard Brands*, 579 F.2d 1282 (5th Cir. 1978), *cert. den.* 441 U.S. 957, 99 S.Ct. 2420, 3103, 60 L.Ed.2d 1075; *International Association of Machinists v. Texas Steel Co.*, 538 F.2d 1116 (5th Cir. 1976), *cert. den.* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542; *General Drivers, Etc., Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

The Company contends that the arbitrator exceeded his authority under the contract between the parties in making the award and that it is not therefore enforceable. The Company's argument is that under the provisions of the contract the final decision on qualifications or competence of employees was reserved as the unquestioned and exclusive right of the Company and that the arbitrator had no authority to hold, as he did, that Jarrell was equally qualified to a retained junior employee. The Company's position is based upon the following provisions of the contract.

Article VIII of the contract provides, in part, as follows:

\* \* \* \* \* \*

"In every case involving advances, promotion, layoffs and discharges, seniority shall control, *subject to the qualifications of the individual employee involved.*

" . . . When it becomes necessary to reduce the working force, the last employee hired shall be laid off first, *provided that he is not better qualified than one of the older employees*; . . . ." (Emphasis supplied)

Article XIV of the agreement is the Company's reservation clause and it provides, in pertinent part, as follows:

"Except to the extent expressly abridged by a specific provision of this agreement, the Company reserves and retains, solely and exclusively, all of the rights that it has had under common law, and all of its inherent rights to manage the business, as such rights existed prior to the execution of this agreement, regardless of the frequency or infrequency with which such rights have been exercised in the past.

"Without limiting the generality of the foregoing, the sole and exclusive rights of management which are not abridged by this agreement include, but are not confined to, full and exclusive control, direction and supervision of the working force and of any and all operations . . . .

\*     \*     \*     \*     \*     \*

"*In all cases in which qualifications or competence of any employee are considered, the determination and judgment of qualifications and competence, and decisions based thereon are functions of management. It is understood that a fair and equitable determination of such qualifications of competence is to the economic best interest of the Company and that the Company will make such determinations in a fair and equitable manner. However, the final decision on such qualifications or competence is the unquestioned right of the Company exclusively.*" (Emphasis supplied)

The decision of the arbitrator provides, in part, as follows:

## "ISSUE

"Did the Company violate the Agreement by laying off the seven grievants and retaining employees who were junior to those employees laid off?

## "ARGUMENT

"The Union maintains that the Company laid off employees who had more seniority than employees who were retained. The evidence showed that the employees laid off had at least equal abilities and qualifications to those employees retained with less seniority. The evidence showed that all of these employees did substantially the same work so that a sharp line could not be drawn between their comparative abilities and qualifications. The Company had no basis, specifically, to retain Mr. Richardson and Mr. Reams and lay off employees who were senior to these two employees.

"*The Company argues that Mr. Richardson and Mr. Reams, who were retained, were better qualified than the seven Warehouse Class # 3 employees who were laid off.* Even if there was a [competitive] equality between the employees, the determination of relative qualifications and ability is vested in the Company under the provisions of Article XIV. *The Company did not act in a capricious manner by laying off the seven grievants and retaining Mr. Richardson and Mr. Reams.*" (Emphasis supplied)

The arbitrator's opinion demonstrates that the Company submitted the question of qualification comparison to the arbitrator:

"The Company Supervisors testified as to their knowledge of Mr. Jarrell. Mr. Carroll stated that he had not observed him run the fork lift but he was qualified on the extruder. He also was qualified as an assistant crew chief. Mr. Louviere did not know of Mr. Jarrell's prior fork lift experience. He also did not know that Mr. Jarrell had worked as a Warehouseman No. 2 for a period of time. Mr. Hernholm stated that Mr. Jarrell had trained for the Warehouseman No. 2 job in 1973 but in 1976 his foreman had not recommended him for the Warehouseman No. 2 vacancy. The Arbitrator concludes

that Mr. Jarrell was certainly equal, if not superior in abilities, qualifications, and experience to Mr. Reams. Recognition was not given to the fact that Mr. Jarrell had obtained fork lift experience during his tour in the Army. In addition, according to his testimony, which was not refuted by the Company, he did work as a Warehouseman No. 2, which is proof of his ability to perform the work in question. Since Mr. Jarrell was senior to Mr. Reams, he should have been retained as a Warehouseman No. 3."

The arbitrator concluded:

"Applying Article XIV the Arbitrator does not believe the Company's determination of the qualifications and [competence] of Mr. Jarrell as compared to Mr. Reams was accomplished in a fair and equitable manner. The evidence convinces the Arbitrator that Mr. Jarrell was certainly equal in skill, ability and experience to that of Mr. Reams, if not superior, so that being the senior employee he should have been retained for the Warehouseman No. 3 job."

■■■ The scope of judicial review in an action to enforce (or to vacate) an arbitration award rendered under a collective bargaining agreement is limited. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Federal labor laws embody a policy favoring arbitration as a substitute for industrial strife. *Alabama Power Co. v. Local Union No. 391*, 612 F.2d 960 (5th Cir. 1980).

■■■ It is well settled that the Court's focus in cases of this nature is narrowed to deciding whether the dispute is arbitrable under the collective bargaining agreement, and, if so, whether the arbitrator's award draws its essence from the agreement. *Boise Cascade v. United Steelworkers of America*, 588 F.2d 127 (5th Cir. 1979), *cert. denied*, 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38.

The Company here seeks to raise the issue as to whether the dispute which the arbitrator resolved was, under the terms of the contract, arbitrable. While the terms of the collective bargaining agreement usually control the issue as to whether an arbitrator exceeded his authority, there are exceptions. The stipulation in this case clearly shows that there was no written submission defining the issue to the arbitrator. On the contrary, the provisions of the grievance paragraph of the contract were followed by both parties; and the Company, without objection, reservation or protest, submitted the ultimate issue of the comparison of qualifications to the arbitrator. The Company argues that under the terms of the contract, the less senior man is laid off first only where his qualifications are not superior to those of a senior employee; however, according to the Company, the decision regarding qualification comparison is one exclusively for the Company.

If that was the Company's position, then it should never have followed the arbitration process; on the contrary, it should have declined to submit to arbitration a matter which was not arbitrable under the contract. It is clear that the Company did submit this issue to the arbitrator and it offered evidence on the point without protest.

*Piggly Wiggly Operators Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union*, 611 F.2d 580 (5th Cir. 1980), illustrates that once the Company has submitted an issue to the arbitrator, it may no longer take the position that it was not arbitrable:

"The parties may act formally and enter into a written submission agreement or they may merely ask the arbiter to decide the written grievance as it has been posed in their conciliation efforts. When they do so, they have in effect empowered him to decide the issues stated in the grievance. The grievance itself becomes the submission's agreement and defines the limits of the arbitrator's authority. Arbitration is a matter of con-

tract . . . but the initial contract to arbitrate may be modified by the submission agreement or grievance." (611 F.2d at 584)

As noted above, the grievance submitted by the parties to the arbitrator in this arbitration was:

"Did the Company violate the Agreement by laying off the seven grievants and retaining employees who were junior to those employees laid off?"

Here, the entire grievance was presented to the arbitrator without reservation and both parties submitted evidence on all the issues and argued the ultimate question of the comparison of qualifications. In *Piggly Wiggly, supra,* the Fifth Circuit has pointed out that this conduct by the Company amounts to an extension of the arbitrator's authority:

". . . Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute." (611 F.2d at 584)

■ Accordingly, regardless of the merits of the Company's claim that it might properly have refused to submit this issue for arbitration, the Court holds that having been arbitrated, the Company has no longer any right to raise this issue. Of course, the Court may not inquire into the basis for the arbiter's award.

■ Plaintiff also claims that he is entitled to attorney's fees because of the Company's refusal to honor the arbitration. Under federal law, the plaintiff is entitled to attorney's fees only where the company refused to abide by the arbitration award without justification. *International Association of Machinists v. Texas Steel Co., supra.*

■ Although the Court holds that the Company no longer has a right to raise the issue raised in Court, it is not a matter that is entirely free of doubt, and I cannot find that the Company was without justification in presenting the matter to the Court for resolution. Accordingly, under federal law, plaintiff is not entitled to attorney's fees.

Plaintiff also claims penalties and attorney's fees under Louisiana's law, LSA–R.S. 23:631 and 632. Section 631 provides that an employer who fails to pay wages due to a discharged employee within a specified period of time shall be subjected to a monetary penalty, and Section 632 provides for reasonable attorney's fees to the plaintiff in a "well-founded suit for any unpaid wages."

Plaintiff takes the position that the wages were "due" within the meaning of Louisiana law when the arbitrator made his award and that the penalties should be assessed against the Company because it failed to pay the award within the period specified in the statute.

■ The Court will not accept the pendent jurisdiction claims and will not award penalties or attorney's fees under Louisiana law. The Court finds that federal law should predominate in this area and the jurisprudence so indicates. *Sanabria v. International Longshoremen's Association Local 1575,* 597 F.2d 312 (1st Cir. 1979); *Wilson H. Lee Co. v. New Haven Printing Pressmen Local Union No. 74,* 255 F.Supp. 929 (D.Conn.1966).

■ Plaintiff has not cited any authority in support of his claim for breach of contract and that claim is DENIED. Since the Court finds that the Company was not "without justification" in resisting payment of the award, there is clearly no justification for punitive damages, assuming *arguendo* that the law authorizes such an award in a proper case.

Accordingly, there will be judgment in favor of plaintiff and against the defendant in the amount of the arbitration award, together with interest. All other claims are DENIED.

Plaintiff's counsel is directed to prepare an appropriate judgment and submit it for signature.