Application of NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES & TECHNICIANS AFL–CIO, Petitioner,

For an Order pursuant to Section 10 of the United States Arbitration Act vacating an arbitration award against NATIONAL BROADCASTING COMPANY, Respondent.

No. 87 Civ. 3870 (MGC).

United States District Court, S.D. New York.

Sept. 15, 1988.

Sturm & Perl by Steven H. Sturm, Lewis F. Lipkin, New York City, for petitioner.

Maurice L. Miller, New York City, for respondent Nat. Broadcasting Co., Inc.

## OPINION AND ORDER

CEDARBAUM, District Judge.

This is a petition to vacate an arbitration award which was rendered on March 22, 1987. Respondent has cross-moved to confirm the award. For the reasons discussed below, the petition is denied, and the cross-motion is granted.

## BACKGROUND

The 1983–1987 Master Agreement between the National Broadcasting Company ("NBC" or the "Company") and the National Association of Broadcast Employees & Technicians ("NABET" or the "Union") expired on March 31, 1987. As the expiration date approached, NBC, as was customary during periods preceding contract expirations, began preparing for the possibility of a strike by Union employees. One of NBC's primary concerns was coverage of its nationally broadcast baseball games, "The Game of the Week."

The first "Game of the Week" broadcast was scheduled for April 11, 1987. As a precaution, NBC decided to train some of its non-unionized employees to broadcast baseball games. NBC arranged for its employees to get experience broadcasting baseball games by simulating broadcasts during a series of Catholic high school games to be played at Veterans Stadium in Philadelphia on March 23, 24, and 25.

On March 20, 1987, an article appeared in *The Philadelphia Inquirer* entitled "Vet Is In NBC Plan To Handle A Strike," in which Calvin Seimer, Secretary–Treasurer of NABET, was reported to have said that the Union would "set up picket lines at such a game." The article also quoted an official of the Catholic high schools as saying that if picket lines were set up, they would not play, since the schools did not want to "get caught in the middle."

NBC officials met that day to discuss the article and decided that if a clear and unequivocal commitment from NABET not to interfere with NBC's operations at Veterans Stadium could not be obtained, NBC would seek expedited injunctive relief pursuant to the Master Agreement.

NBC General Labor Attorney David Obel contacted Seimer on March 20 to learn if the reported threat to picket was accurate.

Seimer told the Company that the Union would not picket, but stated that there would be some form of Union activity. While Obel was discussing the situation with Seimer, Day Krolik, III, NBC's Vice-President of Labor Relations, was contacting Thomas Kennedy, NABET's Network Coordinator. According to the affidavit of Krolik, Kennedy told Krolik that "NABET was going to do what it was going to do." Krolik affidavit ¶ 3. Thus, the Company felt it had not received adequate assurances that NABET would not engage in other activity that could interfere with NBC's training sessions.

On late Friday afternoon, March 20, 1987, the Company filed an arbitration grievance asserting that, in violation of the Master Agreement, a representative of NABET had threatened to interfere with certain Company operations to take place at Veterans Stadium in Philadelphia on Monday, March 23. NBC contacted one of the arbitration umpires listed in the Master Agreement, George Nicolau. In its notice invoking the expedited arbitration procedure, NBC advised the umpire that the Company had discussed the matter with NABET but that no satisfactory resolution had been reached. The Company asked for an immediate hearing and an injunction forbidding union interference with the training sessions.

The umpire informed NBC that the earliest the expedited hearing could be held was on Sunday, March 22. NBC offered the use of its offices for purposes of the hearing. The umpire called the general counsel of the union, Steven Sturm, to inform him of the time and place of the hearing.

On Saturday, March 21, *The Philadelphia Inquirer* reported that the Archdiocese of Philadelphia, citing "union issues," had cancelled the Catholic high school baseball games. Stephen Sturm, NABET's counsel, advised the umpire that the games had been cancelled and that in any event NABET was not planning to picket Veterans Stadium. Sturm told the umpire that since the Union was not planning to picket and since the games had already been cancelled, there was no need for the expedited

hearing. Sturm asked the umpire to relay this information to the Company, which the umpire did in a conversation with Obel. Obel responded that NBC planned to conduct some sort of training exercise even if the games were not played by the Catholic high schools, and that NBC had tried unsuccessfully to obtain a commitment from the Union that it would do nothing to interfere with the Company's training operations. Obel reiterated the Company's desire to proceed with the hearing.

The umpire again spoke with Sturm and advised him that the arbitration would proceed. Sturm then told the umpire that he had been instructed by NABET not to participate in the arbitration and that he would not attend the hearing. The umpire indicated that the hearing would go forward in any event. Later that same day, Kennedy sent a mailgram to the umpire expressing NABET's loss of confidence in him as an impartial umpire and requesting him to resign. While the mailgram was en route, Sturm called the umpire and advised him of the contents of the mailgram. The umpire responded that he would take no action with respect to NABET's request that he resign until a written request to resign was actually received.

On Sunday, March 22, at 10:00 a.m., the arbitration hearing began. At that time, the umpire attempted to contact NABET counsel to ascertain whether any NABET representative would appear. The attempt proved unsuccessful, and NBC counsel Obel was instructed to proceed with his case. At the conclusion of the Company's case, at approximately 11:30 a.m., the umpire again attempted and this time succeeded in reaching the Union's counsel. Sturm reiterated his previous position that the Union would not appear. Thereupon, the hearing was closed.

That evening, the umpire issued an Award stating:

> The Union and its members may not picket or engage in other means of interference with Company operations at Veterans Stadium in Philadelphia on March 23, 24, or 25, 1987.

The Union took no action at Veterans Stadium on the above dates, and the Company conducted its training exercises.

## DISCUSSION

 It is well settled that judicial review of an arbitration award is very narrowly limited. *See, e.g., Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987); *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980). The court must grant confirmation of an award unless a statutory basis for vacating or modifying the award is present, or unless the award was made in manifest disregard of the law. *See Sperry International Trade, Inc. v. Government of Israel,* 689 F.2d 301, 305 (2d Cir.1982). The burden of proving a ground for vacating an award rests on the party who seeks to vacate it. *See International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548 (2d Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 700 (2d Cir.1978).

NABET contends that the award must be vacated pursuant to Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10,[1] on three grounds: (1) that the umpire exceeded his powers in conducting a § 20.10 expedited arbitration; (2) that the umpire so imperfectly executed his powers that a mutual, final, and definite award was not made; and (3) that there was evident partiality on the part of the umpire. NABET also contends that the award must be set aside because of the umpire's manifest disregard of applicable law.

A. *The Expedited Arbitration Procedure*

 NABET contends that the umpire "exceeded his powers" by conducting an expedited arbitration hearing pursuant to the Master Agreement in the absence of

circumstances warranting such an expedited hearing. *See* 9 U.S.C. § 10(d).

Article V of the Master Agreement provides:

## "NO STRIKES or LOCKOUTS

### Section 5.1

It is agreed that there will be no stoppage of work, lockout or other interference with Company operations and that the employees hereunder will perform their regular and customary duties for the Company until one of the parties has failed to comply promptly with any final decision of the Impartial umpire or an arbitrator pursuant to Article XX."

Section 20.10, pursuant to which the Company filed its grievance, reads, as relevant:

"Notwithstanding any of the foregoing provisions of this Article XX, if a party to the Agreement claims that there will be a violation of Article II, V, VI, VII, VIII, A–II or A–IV, or of an arbitration award, such party shall have the right to file a grievance directly with the Impartial umpire setting forth such claim, demanding injunctive relief, and invoking the expedited arbitration procedure set forth below. However, this Section 20.-10, which is applicable only to complaints of action not yet effectuated, may be utilized only if time does not permit the processing of the grievance under the other Sections of Article XX. No grievance shall be filed under this Section until such grievance has been discussed (by phone or otherwise) between a designated official of the International Office of the Union and a designated official of the main office of the Company. A copy of the notice invoking this Section shall be sent simultaneously to the other party. Under the expedited procedure, the arbitration hearings shall commence at

---

1. Section 10 of the Federal Arbitration Act in relevant part provides:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

\* \* \* \* \* \*

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

\* \* \* \* \* \*

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

the earliest availability of the Impartial umpire unless the grieving party consents to an extension of time.

If the Impartial umpire is unable or unwilling to hear the grievance within twenty-four (24) hours, another arbitrator may be designated to hear such grievance as the Impartial umpire under this Section by mutual agreement of the parties. The award of the Impartial umpire shall be rendered at the earliest possible time and in any event no later than twenty-four hours (24) hours after the hearing has been closed. The Impartial umpire shall be empowered under this procedure to order injunctive relief or such other remedy as he deems appropriate if he finds there will be (or has been) a violation of one of the provisions specified at the beginning of this Section or of an arbitration award...."

Thus, § 20.10 imposes several prerequisites before an expedited arbitration may be heard by the impartial umpire: (1) a complaint of action not yet effectuated; (2) a timeframe that does not permit the processing of the grievance under the other sections of Article XX; and (3) a grievance that has been discussed (by phone or otherwise) between a designated official of the Union and the Company.

NABET contends that since the Union had assured both the Company and the umpire that it was not planning to picket, and since the Catholic high school baseball games had already been cancelled, there was no "action not yet effectuated" that would interfere with "Company operations" at Veterans Stadium. Therefore, NABET argues, the grievance filed by NBC did not meet the requirements for a § 20.10 expedited arbitration, and the Union was justified in refusing to participate in the expedited hearing.

NBC, on the other hand, asserts that its hope was that upon a quick resolution of the dispute, the Catholic schools might change their position about not playing the games. In any event, NBC began to plan alternative games for the same dates, and therefore still believed that the issue was alive.

After reviewing the facts and the umpire's Opinion and Award, I conclude that the umpire did not exceed his authority in conducting an expedited arbitration procedure pursuant to § 20.10. Article V provides among other things that the Union will not interfere with Company operations. The umpire determined that the training sessions were "Company operations," and this point is not in dispute. Section 20.10 provides that a party to the Master Agreement shall have the right to file a grievance for expedited arbitration if that party claims that there will be a violation of Article V. While the Union may have assured the Company that it would not picket at Veterans Stadium on the dates at issue, the Union did not promise not to interfere in some other way with the Company's training operations. *See* Krolik affidavit ¶ 3; Obel affidavit ¶¶ 6, 9.

I do not reach the question of whether a reasonable basis is required for the filing of a grievance since I find that in this case there was such a reasonable basis. The Company filed a complaint of action not yet effectuated, thereby satisfying the first prerequisite of § 20.10. Since the perceived threat of Union action was to occur within two days, time did not permit the processing of the grievance under the other sections of Article XX, thereby satisfying the second prerequisite. Finally, it is undisputed that the third prerequisite, that designated representatives of the Union and the Company discuss the Company's grievance, was satisfied. Since the prerequisites for an expedited arbitration hearing pursuant to § 20.10 were all satisfied, the umpire did not exceed his authority by conducting such a hearing.

B. *The Adequacy of the Umpire's Award*

NABET's second ground for vacating the award is that "a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d). NABET maintains that the latter portion of the award, which enjoins the Union from "engag[ing] in other means of interference with Company operations at Veterans Stadium on March 23, 24 or 25,

1987," is too vague and gives the union no idea of what activities have been enjoined.

While the award is specific as to the date and place of its application, the award does not detail precisely what conduct, other than picketing, is enjoined. This, however, does not mandate that the award be vacated or remanded to the umpire for clarification. The award enjoining NABET from "engag[ing] in other means of interference with Company operations" simply tracks the language of Article V of the Master Agreement. The umpire found that a threat to interfere with Company operations was made, and that a disavowal was not forthcoming when requested. Opinion and Award at 11. By not appearing at the arbitration either to give assurances satisfying the umpire that there would be no interference with the training sessions or to articulate what actions were planned, the Union made it impossible for the umpire to draft an award more specific in scope. The umpire was therefore justified in drafting a flexible award, *see Kallen v. District 1199, National Union of Hospital and Health Care Employees,* 574 F.2d 723, 726 (2d Cir.1978), that tracked the very language the parties had agreed to in defining NABET's obligations under Article V.

In an attempt to justify its refusal to participate in the expedited arbitration hearing, NABET relies on the case of *Jarrell v. Wilson,* 490 F.Supp. 412 (M.D.La. 1980). In *Jarrell,* there was a dispute with respect to laying off certain workers. Pursuant to the collective bargaining agreement, the dispute was presented to an arbitrator. All the parties to the dispute appeared before the arbitrator and presented their arguments and witnesses. The company later claimed that the decision exceeded the arbitrator's authority. The Court held that since the parties had presented the issue to the arbitrator "without objection, reservation or protest," the company was estopped from later arguing that a particular question was not arbitrable. *Id.* at 416. The Court stated that if it was the company's position that a particular question was not arbitrable, then "it should never have followed the arbitration process; on the contrary, it should have declined to submit to arbitration a matter which was not arbitrable under the contract." *Id.*

NABET isolates the language of the Court in *Jarrell* from the facts of the case and argues that in order to preserve its objection in this case, it was required to refuse to participate in the arbitration. *Jarrell* does not support that position. In *Jarrell,* the company failed to express any objection to the arbitrator. It was this failure to object, and not participation in the arbitration proceeding, that resulted in the objection being barred by the court. Refusal to participate in an arbitration proceeding is not required in order to preserve an objection to arbitrability. On the contrary, the purpose of the Federal Arbitration Act is to encourage participation. NABET was not justified in its refusal.

## C. *Manifest Disregard of the Law*

■ NABET next argues that the award of the umpire amounted to a preliminary injunction, yet the umpire ignored the well-established standard of this Circuit for granting a preliminary injunction. In addition, NABET contends that the injunction ordered by the umpire violated the Norris-LaGuardia Act, 29 U.S.C. § 104. These arguments assert manifest disregard of the law as a basis for vacatur.

The Second Circuit in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986), clarified the standard by which district courts are to decide whether to vacate an arbitration award for manifest disregard of the law.

[I]t clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it ... Judicial inquiry under the 'manifest

disregard' standard is therefore extremely limited.

There is no evidence that the umpire manifested a disregard for the law in this arbitration. Section 20.10 of the Master Agreement expressly provides that "the Impartial umpire shall be empowered ... to order injunctive relief ... if he finds there will be (or has been) a violation of [Article V]." The power of the umpire to order injunctive relief was bargained for and agreed to by the parties.

With respect to NABET's argument that the umpire did not consider the elements required to be satisfied before a preliminary injunction could issue, NABET points only to cases involving the issuance of a preliminary injunction by a federal district court. As to NABET's contention that an injunction would violate the Norris–LaGuardia Act, that Act proscribes courts of the United States from issuing injunctions in cases involving labor disputes. *See* 29 U.S.C. § 104; *cf Boys Markets v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (Norris–LaGuardia Act does not bar a federal court from granting injunctive relief in cases in which collective bargaining agreement contains mandatory arbitration procedure). NABET has come forward with no authority in support of its position that the umpire in this arbitration was inhibited from exercising the powers that were expressly given to him in the Master Agreement, nor has NABET argued that under the circumstances of this case, injunctive relief was unwarranted. Because NABET has not shown that the umpire disregarded the law, the award cannot be vacated on this basis.

D. *The Umpire's Impartiality*

NABET's final ground for vacating the umpire's award is that there was "evident partiality" on the part of the umpire. *See* 9 U.S.C. § 10(b). In support of this argument, NABET offers the following facts.

(1) The umpire honored the Company's request for an expedited hearing even though the Union assured the umpire that it would not picket, and the baseball games had been cancelled.

(2) The umpire accepted the Company's statement that no satisfactory resolution had been reached during conversations between designated officials of the Union and the Company.

(3) The umpire had told NABET officials that he was too busy to conduct hearings on some grievances filed by NABET.

(4) NABET requested the umpire to resign prior to the hearing, but the umpire did not agree to resign.

(5) The umpire issued an award against NABET.

(6) The umpire granted NBC greater relief than NBC had requested.

■ The Federal Arbitration Act authorizes a district court to vacate an arbitration award "where there is evident partiality." 9 U.S.C. § 10(b). The Second Circuit has restricted a court's power to vacate an award on this ground by ruling that the mere "appearance of bias" is insufficient to satisfy the statutory standard of evident partiality. *Pitta v. Hotel Ass'n of New York City, Inc.*, 806 F.2d 419, 423 (2d Cir. 1986). "Evident partiality" within the meaning of 9 U.S.C. § 10 is present in an arbitration proceeding in which a reasonable person would have to conclude that an arbitrator was partial. *See Morelite Constr. Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984).

■ The first two grounds urged by NABET have been discussed above. The Company had the right to file a grievance when it believed that it had not received adequate assurance that the Union would not interfere with Company operations. The umpire, who was listed in the Master Agreement as an impartial umpire, had no basis for refusing to hear NBC's grievance. NABET also argues that the umpire's acceptance of the Company's representation that the parties had not reached a satisfactory solution during discussions between designated officials indicates partiality. It is not clear that the umpire in fact accepted such a representation from the Company, nor was it necessary for him to do so. The umpire needed only to know that discus-

sions had taken place between the parties since § 20.10 requires nothing more than discussion, and this fact is not in dispute.

■ The third fact pointed to by NABET is that the umpire made time for NBC's grievance while he had been too busy to hear other NABET grievances. NABET, however, does not assert that any of its grievances included requests for expedited arbitration pursuant to § 20.10. Nor does NABET assert that the umpire has ever refused its request for expedited arbitration pursuant to § 20.10.

■ NABET also relies on the fact that it requested the umpire to resign prior to the hearing, but that this request was refused. According to the Obel affidavit, while the umpire was told that a request had been made by NABET that he resign, on the morning of the hearing the umpire had still not received such a request in writing. Obel affidavit ¶ 10. The umpire's Opinion and Award does not address a request to resign. It is therefore unclear whether such a written request was ever received. In any event, the fact that the umpire refused to resign on the eve of an expedited hearing does not show partiality.

■ The fifth fact pointed to by NABET in support of its claim of evident partiality is that the umpire rendered a decision in favor of NBC. The fact that the umpire found in favor of the Company and against the Union does not in any way satisfy NABET's burden of showing partiality. *See Thomas C. Baer, Inc. v. Architectural & Ornamental Iron Workers Local Union 580*, 813 F.2d 562, 565 (2d Cir. 1987).

■ The final point raised by NABET is that the award rendered by the umpire demonstrates partiality since it afforded greater relief to NBC than NBC had requested. This argument is premised on the erroneous assertion that the Company's grievance requested only that the umpire enjoin picketing at Veterans Stadium. The grievance filed by NBC requested an injunction forbidding NABET from interfering with the Company's training sessions. It was not limited to picketing alone. Therefore, the umpire's injunction against other means of interference with Company operations did not exceed the relief requested. On the contrary, NBC's justification of its need for an expedited hearing was that NABET's agreement not to picket did not protect against other means of interference.

There is no evidence that the umpire acted out of any improper motive or was predisposed in favor of either party. The facts offered by NABET do not satisfy NABET's burden of showing "evident partiality." Accordingly, the award of the umpire cannot be vacated on this ground.

### CONCLUSION

Since NABET has not established a basis for vacating the award of the umpire, the petition to vacate the award is denied, and the cross-motion to confirm the award is granted.

SO ORDERED.